540 P.2d 724

**HERCULES DRAYAGE CO., INC., a corporation, Appellant and Cross-Appellee,**

v.

**CHANCO LEASING CORPORATION, dba Williamsburg Leasing Corporation, a California Corporation, Appellee and Cross-Appellant.**

**No. 1 CA-CIV 2404.**

Court of Appeals of Arizona,
Division 1,
Department A.

Sept. 25, 1975.

Rehearing Denied Nov. 7, 1975.
Review Denied Dec. 16, 1975.

Thaddeus G. Baker, P.C., Yuma, for appellant and cross-appellee.

Westover, Choules, Shadle & Bowen, by Ted B. Bowen, Yuma, for appellee and cross-appellant.

## OPINION

DONOFRIO, Judge.

This action arose when a dump truck and trailer were replevined by Chanco Leasing Corporation from the possession of Hercules Drayage Co., Inc. and a subsequent suit was brought by Chanco for a deficiency judgment againt Hercules after the truck and trailer were sold. Hercules denied default in the payments under the contract between the parties, counterclaimed for wrongful replevin, and asked for damages for the value of the equipment and loss of its use. The case was submitted to a jury upon special interrogatories. The jury found in favor of Hercules and assessed damages. Judgment was entered in accordance with the jury verdict, but a new trial was ordered on the issue of loss of use of the truck and trailer. Hercules is appealing from the granting of a new trial on the issue of loss of use of the equipment, and Chanco is appealing from the failure of the trial court to grant a judgment notwithstanding the jury verdict or a new trial on all issues.

The jury returned verdicts in favor of Hercules on all issues presented during the several days of trial. Among other findings the jury found that Hercules was not in default in its payments to Chanco; that the replevin instituted by Chanco was wrongful; that the equipment was not resold in a commercially reasonable manner; and that the individual with whom Hercules was dealing throughout the various transactions between the parties (one Eddy Neil) was an agent and employee of Chanco.

Our review of the record leads us to conclude that the jury verdict was fully supported by the evidence in the case. We therefore find no merit in the cross-appeal of Chanco from the failure of the trial court to grant a new trial on all issues or its failure to grant a judgment notwithstanding the verdict.

The trial court, in granting a new trial on the issue of loss of use of the equipment (in essence, loss of profits by Hercules), supported its conclusion by stating:

"The Court sets aside the verdict of $26,460 upon the ground that the proof of amount of damages was sketchy and insufficient, and defendants were not given sufficient notice of documents introduced."

We disagree with this conclusion of the trial court and reverse, reinstating the verdict of the jury.

The documents in question were invoices of the Hercules Co. that related to the replevined truck and trailer during the time it was in Hercules' possession and use. The truck and trailer were used to haul volcanic cinder and other bulk commodities

from Yuma, Arizona, to San Diego, California. Each time a trip was made and a load of material carried, an invoice and supporting documents were prepared which reflected charges to the customer, mileage, etc. From these invoices and the experience of Hercules' company president, and the testimony of other witnesses, a projection was made by Hercules as to the loss of profits for the period of time it would have taken the company to replace the wrongfully replevined truck and trailer. Chanco asserts that it was prejudiced by the failure of Hercules to turn over these documents early enough in the litigation for its use. We find no merit in this assertion by Chanco. The documents were never offered in evidence by Hercules, and were used as evidence by Chanco's attorney in his cross-examination of Hercules' president.

The record reflects that in June of 1971 Chanco had requested the documents, but they were not produced because they were in the hands of Hercules' company auditor in California. One flaw in Chanco's argument is that if it was necessary for Chanco to have the documents at this period of time in the litigation, then Chanco should have moved for sanctions under Rule 37, Arizona Rules of Civil Procedure, 16 A.R.S., for failure of discovery. This it never did. The total number of documents involved was 47, and all were made available to Chanco by Hercules at least as early as May 8, 1972, some seventeen days before they were the basis of any testimony. Chanco avoided examining the 47 invoices until the day before its cross-examination of Hercules' president. Our interpretation of Rule 37 would require that the party wishing to avail itself of the sanctions for failure of discovery must move the court for an order sanctioning the alleged uncooperative party. The court's granting of a new trial in the instant case is therefore error where it is founded upon the failure to cooperate in discovery procedures. In our opinion Chanco had ample opportunity to examine

the subject invoices and no prejudice to its case has been shown. We would also note that the testimony concerning loss of use (lost profits) of Hercules due to the wrongful replevin of the truck and trailer was entirely oral, and the 47 invoices were in fact offered in evidence by Chanco in its cross-examination.

The court's second ground for granting a new trial on the issue of lost profits was that the evidence of lost profits was sketchy and insufficient. With this we do not agree. The evidence of the profits lost to Hercules by reason of the wrongful replevin of the truck and trailer was elicited from the testimony of Hercules' president, Creighton Webb. From his examination of the records (invoices) of the past performance of this truck during a comparable period of time, from his own knowledge and experience in the business and industry, and from the testimony of experts in the costs of operating similar equipment, he made projections of the profits that his company lost when the truck and trailer were taken. His projection was for the period of time it would take to replace the truck and trailer.

Using a piece of paper on a board so that the jury could see his calculations, he determined the profit per truckload per day for the projected 90 working days the truck could have been used until a replacement truck could be obtained. The Hercules company was in the business of transporting volcanic cinder from Yuma to the San Diego area, so the fact that they were damaged by the taking of the truck is beyond question. It is accepted that proof of the fact of damages must be higher than proof of the extent of the damages in a situation such as this. *Coury Brothers Ranches, Inc. v. Ellsworth*, 103 Ariz. 515, 446 P.2d 458 (1968); *Jacob v. Miner*, 67 Ariz. 109, 191 P.2d 734 (1948). From the testimony of Webb it was established that there was a market for the cinder in San Diego; the various customers were identified; the purpose of purchasing the truck and trailer was to make those deliveries

which required the specialized equipment on the truck; there were no replacement vehicles which could be obtained earlier than four months later; and the profit per truckload was established. Therefore, for hauling the cinder to San Diego for the projected 90 working days before a replacement could be obtained, the truck and trailer would generate profits of $17,910 based on past performance and future predictions. It appears that Chanco thoroughly cross-examined Webb's testimony but was apparently unable to convince the jury that the damages were unsubstantiated.

 There was also testimony of an oral contract between Hercules and a grain company for Hercules to use this truck and others to haul grain at night during the same 90-day period. Loss of profits for this period for grain hauling with the replevined truck and trailer was $8,550, determined in a similar manner as the loss attributed to the cinder hauling business. The jury returned a verdict for the total of both losses, or $26,460. Although certainty as to the amount of damages is not essential to recovery when the fact of damages is proven, the evidence must provide some reasonable basis for estimating loss of profits. *Gilmore v. Cohen,* 95 Ariz. 34, 386 P.2d 81 (1963); *Jacob v. Miner,* supra. See also *Martin v. LaFon,* 55 Ariz. 196, 100 P.2d 182 (1940).

 We hold that the above evidence is more than sufficient to support the jury verdict. The evidence in the instant case measured the damages for loss of profits with as much mathematical precision as the nature of the claim and the available evidence could provide. *Isenberg v. Lemon,* 84 Ariz. 340, 327 P.2d 1016 (1958); *Gilmore v. Cohen,* supra.

We affirm the judgment of the trial court in refusing to grant a judgment notwithstanding the jury verdict, but reverse the granting of a new trial on the issue of loss of profits and direct that judgment be entered in accordance with the jury verdict on that issue.

OGG, P. J., and FROEB, J., concurring.