758 P.2d 144

**VERDE DITCH COMPANY, by Ted Allert, Vince V. Higginbotham, Glen W. Everett, Commissioners, Plaintiffs–Appellees,**

**v.**

**Albert JAMES, a married man dealing with his sole and separate property, Defendant–Appellant.**

**No. 1 CA–CIV 9542.**

Court of Appeals of Arizona, Division 1, Department C.

June 7, 1988.

**370**

Mabery & Stadelman by L. Richard Mabery, Prescott, for plaintiffs-appellees.

Machmer & Schlosser by Gerald A. Machmer, Phoenix, for defendant-appellant.

## OPINION

CORCORAN, Judge.

Albert James appeals from the trial court's entry of default judgment as a sanction pursuant to rule 37(d), Arizona Rules of Civil Procedure, and from an award of punitive damages.

In August 1984, the Commissioners of the Verde Ditch Co. sued James on behalf of Verde Ditch. According to Verde Ditch, it had built a dike to control water 40 years ago. Verde Ditch alleged that James destroyed the part of its dike that was on James's land. Verde Ditch requested compensatory and punitive damages and attorneys' fees. It also requested a mandatory injunction requiring James to restore the dike and a permanent injunction prohibiting James from diverting the watercourse.

With respect to Verde Ditch's request for injunctive relief, the trial court entered a number of orders. In September 1984, it held a hearing, at which James was represented by counsel, and ordered James to restore the dike within 30 days and to refrain from diverting the watercourse. At that time, the trial court concluded that James's removal of the dike constituted a diversion of the watercourse that violated A.R.S. § 48–3613 (former A.R.S. § 45–2343).

In March 1985, in response to Verde Ditch's motion for order to show cause, the trial court repeated its order that James restore the dike within 30 days. In September 1985, in response to Verde Ditch's motion for renewal of order to show cause, the trial court found that James was in contempt and that James could purge himself of contempt by restoring the dike within 30 days. In the event that he failed to do so, the court authorized Verde Ditch to restore the dike with judgment to follow against James for Verde Ditch's restoration expenses. When James did not comply, Verde Ditch proceeded with restoration. In December 1985, the trial court entered partial judgment against James for restoration expenses of $1,938.

During 1985, James had brought a separate action against Verde Ditch to quiet title to his land. Verde Ditch counterclaimed to quiet title to a strip of James's land on which the dike was located and to establish an easement on James's land. The trial court consolidated James's quiet title action with Verde Ditch's action for injunctive relief and damages.

On April 28, 1986, Verde Ditch sent James a notice of service of nonuniform interrogatories, a request for production of documents, and a notice of deposition to take place on June 3, 1986. On May 27, 1986, Verde Ditch sent James a letter reminding him about the interrogatories, the request for production, and the deposition. James failed to respond to the interrogatories and request for production and did not appear at the deposition. At that time, the trial in the consolidated case was set for July 11, 1986. On June 10, 1986, Verde Ditch moved for sanctions under rule 37(d), Arizona Rules of Civil Procedure.

On June 30, 1986, the trial court heard and granted Verde Ditch's motion for sanctions. James did not appear in person or through counsel. The trial court struck James's answer and entered his default on Verde Ditch's damage claim. It also dismissed James's complaint and entered his default on Verde Ditch's quiet title and easement counterclaim. The trial court vacated the trial date and scheduled a hearing to determine Verde Ditch's damages.

On July 21, 1986, the trial court held a hearing to determine damages. Once again, James did not appear in person or through counsel. The court awarded Verde Ditch $27,550 in compensatory damages, $20,000 in punitive damages, $5,790 in attorneys' fees, and costs.

James raises the following three arguments on appeal:

1. he did not receive adequate notice of the sanctions hearing;
2. he was denied a fair trial because of irregularities surrounding the sanctions hearing; and
3. Verde Ditch failed to prove at the damages hearing that he had the "evil mind" necessary to support the punitive damages award.

We find no merit in James's arguments and affirm the trial court's judgment.

### 1. *Notice of Sanctions Hearing*

Until November 1985, George Ireland was counsel of record for James. From November 1985 until February 1986, Sidney Lachter was counsel of record for James. Since August 1986, Gerald A. Machmer has been counsel of record for James. James was thus unrepresented from February 1986 to August 1986. The sanction and damage hearings occurred during that interval.

■ First, James argues that he did not receive actual notice of the sanctions hearing. In support of his argument, James states that Verde Ditch's notice of expedited hearing on its motion for sanctions did not contain an affidavit of mailing. Thus, he argues that Verde Ditch failed to comply with rule 5(c), which requires service by hand-delivery or mail.

During the sanctions hearing, the trial court found that James had appropriate notice of the hearing. Substantial evidence supported this finding. On June 11, 1986, the trial court mailed to James a notice of expedited hearing.

Moreover, in response to James's motion for new trial, the secretary to counsel for Verde Ditch stated by affidavit that she also sent James a notice of expedited hearing. The record indicates that neither notice was returned to its sender as undeliverable. Based on this evidence, the trial court appropriately found that James had received notice of the sanctions hearing. Given evidence that James received actual notice, we hold inconsequential Verde Ditch's failure to place an affidavit of mailing on the notice it filed with the court.

### 2. *Rule 37(d) Sanctions*

James also argues that the trial court should have issued an order compelling his compliance with Verde Ditch's discovery requests under rule 37(a) before imposing sanctions under rule 37(d).

Rule 37(d) clearly grants the trial court discretion to sanction a party's failure to attend his own deposition or respond to interrogatories. The rule provides in part:

> Failure of party to attend at own deposition or serve answers to interrogatories or respond to request for inspection. If a party ... fails (1) to appear before the officer who is to take the deposition, after being served with proper notice, or (2) to serve answers or objections to interrogatories submitted under Rule 33, after proper service of the interrogatories, ... the court in which the action is pending on motion may make such orders in regard to the failure as are just, and among others it may take any action authorized under paragraphs (A), (B), and (C) of subdivision (b)(2) of this rule.

Rule 37(d). The sanctions authorized in rule 37(b)(2)(C) include:

> An order striking out pleadings or parts thereof, or staying further proceedings until the order is obeyed, or dismissing the action or proceeding or any part thereof, or rendering a judgment by default against the disobedient party....

■ The procedures for imposing sanctions under rules 37(b) and (d) differ. Rule 37(b) requires as a predicate to sanctions the disobedience of an order issued after the injured party files a motion to compel under rule 37(a). However, rule 37(d) does not require disobedience of an order to compel before sanctions are authorized. *Compare AG Rancho Equip. Co. v. Massey–Ferguson, Inc.*, 123 Ariz. 122, 123–124, 598 P.2d 100, 101–02 (1979) (default entered after defendants failed to respond to plaintiffs' interrogatories in disobedience of order compelling discovery) *with Copper State Bank v. Saggio*, 139 Ariz. 438, 440–41, 679 P.2d 84, 86–87 (App.1983) (default entered after defendants failed to appear

at their depositions with no previous order to compel discovery) *and American Title & Trust Co. v. Hughes,* 4 Ariz.App. 341, 343–44, 420 P.2d 584, 586–87 (1966) (answer stricken after officer of defendant failed to appear at his deposition with no previous order to compel discovery).

As explained by the Seventh Circuit Court of Appeals, the distinction between sanctions imposed under rules 37(b) and (d), Federal Rules of Civil Procedure, is that under rule 37(d), "the court may impose sanctions directly, without first issuing an order to compel discovery...." *Charter House Ins. Brokers, Ltd. v. New Hampshire Ins. Co.,* 667 F.2d 600, 604 (7th Cir. 1981). The court explained the rationale for this distinction:

> In such a system, designed to operate insofar as possible without judicial intervention, it is crucial, of course, that the initial request be answered and such objections as the party may have be set forth. If it were necessary to seek a court order requiring a response, followed by a response setting up objections, followed by a second motion to resolve the objections and order discovery, the possibility for delay and abuse would be apparent. Rule 37(d) makes it explicit that a party properly served has an absolute duty to respond.... Thus, there must be an order under subdivision (a) before sanctions are imposed under (b), while under (d) the party aggrieved moves directly for the imposition of sanctions.

*Charter House* at 604, *quoting* 4A *Moore's Federal Practice* ¶ 37.05 at 37–100 (1981).

The two decisions cited by James do not support his argument. *See Hercules Drayage Co., Inc. v. Chanco Leasing Corp.,* 24 Ariz.App. 598, 540 P.2d 724 (1975); *Hancock v. Arizona Cent. Credit Union,* 24 Ariz.App. 167, 536 P.2d 1059 (1975). In *Hercules Drayage,* this court reversed the trial court's order granting a new trial as a sanction for failing to cooperate in discovery where no objection was made until after the jury trial. 24 Ariz. App. at 600, 540 P.2d at 726. In *Hancock,* although the deponent's answers were evasive and nonresponsive, the deponent did appear at his deposition. 24 Ariz.App. at 169, 536 P.2d at 1061. *See also Gulf Homes, Inc. v. Beron,* 141 Ariz. 624, 629, 688 P.2d 632, 637 (1984) (overruling *Hancock*).

### 2. *Fair Trial*

James alternatively argues that he was denied a fair trial during the sanctions hearing. He explains that he could not protect his interests because he resided in Pennsylvania, because his counsel Gerald Machmer was on vacation, and because he was unable to obtain his file from one of his prior counsel.

During the period when Verde Ditch requested discovery and sanctions, James was not represented by counsel of record. James apparently sought his file from prior counsel George Ireland, who no longer had his file, not from prior counsel Sidney Lachter, who still had his file.

■ James's inability to obtain his file while he was not represented by counsel does not excuse his failure to appear or attempt to reschedule his deposition. James received the discovery requests and notice of deposition and ignored them. A party representing himself is held to the same familiarity with procedural rules as a member of the Bar. *Smith v. Rabb,* 95 Ariz. 49, 386 P.2d 649 (1963). Thus, the trial court appropriately imposed the sanctions authorized by the rules for failure to appear. *See Copper State Bank,* 139 Ariz. at 441, 679 P.2d at 87.

### 3. *Punitive Damages*

James argues that Verde Ditch did not prove, and the trial court did not find, that James had the evil mind necessary for imposition of punitive damages. *See Linthicum v. Nationwide Nat'l Life Ins. Co.,* 150 Ariz. 326, 330, 723 P.2d 675, 679 (1986). In particular, James argues that he removed the dike under the belief that Verde Ditch improperly built the dike on his land. James also argues that the only finding the trial court made about his conduct was that it was "obstreporous."

To prove James's evil mind, Verde Ditch could have proved either that James intended to injure it or that James "consciously pursued a course of conduct knowing that it created a substantial risk of significant harm to others." *Rawlings v. Apodaca*, 151 Ariz. 149, 162, 726 P.2d 565, 578 (1986).

■ We acknowledge that this case broaches the issue whether James's conduct *after* the filing of the complaint can be considered as evidence of his evil mind. More precisely, was the court entitled to consider James's failure to comply with a mandatory injunction and other post-complaint orders in determining the issue of evil mind? Although the trial court apparently considered all of James's conduct throughout the litigation in imposing punitive damages, James did not raise and the parties did not brief this issue. Thus, James did not preserve it for appeal. Moreover, we need not address the question whether James's post-complaint conduct supported the imposition of punitive damages if we find adequate support in James's pre-complaint conduct.

■ We conclude that Verde Ditch produced substantial evidence to support a finding that when James removed the dike, he either intended to injure Verde Ditch or consciously pursued a course of conduct knowing that his conduct created a substantial risk of significant harm to others. At the damages hearing, Commissioner Glen Everett testified that Verde Ditch's representatives repeatedly asked James not to remove the dike because of the potential damage to Verde Ditch. Verde Ditch wrote to James on April 1, 1983—16 months before this suit—requesting that he not remove the dike because it would result in problems to Verde Ditch. That letter stated that "the dike was built in years past to protect the Verde Ditch. Its removal may cause flooding and damage to the Verde Ditch." On May 19, 1983, in a subsequent letter to James, Verde Ditch's counsel warned, "We are concerned that any removal of the dike could lead to the flooding of the Verde Ditch as well as adjoining land owners." In a third letter dated August 8, 1983, counsel warned James again:

We cannot emphasize strongly enough that the existence of the dike all the way to the ditch, is vitally important to the protection of the Verde Ditch. If water comes down through the box culvert, hits the dike and then comes out across your property without being channeled into the ditch, there is little doubt that the Verde Ditch will be washed out and we would be forced to look to you for repayment of all costs to rebuild the dike.

Frankly, we are at a loss why you would want to tear out the dike since it protects your property.

In a fourth letter, dated April 18, 1984 —4 months before this suit—the office of the Yavapai County Attorney wrote to James:

As I stated before, the problem of removal of the dike from your Camp Verde property is a dangerous condition which must be cured as quickly as possible.

We conclude from this record that the trial court had sufficient evidence before it to warrant imposition of punitive damages under the *Linthicum* and *Rawlings* standards, by finding that James consciously removed the dike either with intent to injure or with knowledge of the substantial risk of significant harm to others.

### 4. *Attorneys' Fees*

We deny James's and Verde Ditch's requests for attorneys' fees under A.R.S. § 12–349(A). We grant Verde Ditch's request for attorneys' fees under A.R.S. § 48–3613(D).

We affirm the trial court's judgment.

SHELLEY and FIDEL, JJ., concur.