491 P.2d 848

Robert **MAYHEW**, Appellant,

v.

Rosemary **McDOUGALL** et al., Appellees.

No. 2 CA–CIV 1020.

Court of Appeals of Arizona,
Division 2.

Dec. 16, 1971.

Lesher & Scruggs, by D. Thompson Slutes, Tucson, for appellant.

Soble & Cole, P. C., by Joseph H. Soble, Tucson, for appellees.

HOWARD, Judge.

The appellant in this case is seeking to set aside the entry of default and default judgment against him in the sum of $90,000.

The appellant Robert Mayhew had rented an automobile from the American Auto Rental, Tucson, Arizona. Balboa Insurance Company was American Auto Rental's insurer and under the terms of a policy issued by Balboa Insurance Company to American Auto Rental, Mayhew was an insured.

On May 25, 1969, the appellant was driving the leased automobile in the vicinity of Alvernon and Broadway in Tucson. He was on his way to the University of Arizona to see two friends of his, appellees Filimon Chaboya and Max O'Donnal. Upon spotting them in a taxicab going in the opposite direction, appellant swung his car around behind them and commenced following them. The taxicab pulled into a left-hand turn bay with appellant following. An accident ensued when the appellant dropped a Coke on his leg, lost control of the automobile and rear-ended the taxicab.

The accident was reported by American Auto Rental to its insurance carrier, Balboa Insurance Company who in turn, contacted its adjusting agency in Tucson, the Lyle O'Keefe Adjustment Company, Inc. Henry Wood, an adjuster for Lyle O'Keefe, opened up a claims file on the accident.

Appellees were eventually represented by attorney Joseph Soble, who, after carrying on negotiations with adjuster Wood, filed a complaint in the Pima County Superior

Court. No answer was filed by the defendant and the default judgment previously mentioned was entered.

Appellant unsuccessfully moved in the trial court to have the default and the default judgment set aside. On review, appellant presents the following questions: (1) Was jurisdiction over defendant ever obtained which would support the judgment? (2) Did the trial court abuse its discretion in failing to set aside entry of default and/or default judgment since the failure to answer was based upon mistake, surprise, inadvertence and excusable neglect, or for other reasons justifying relief from the operation of the judgment? (3) Should the entry of default judgment be set aside in the interest of justice since the award was excessive in view of the injuries?

## JURISDICTION OVER THE DEFENDANT

The return of service indicates that the appellant was served "at 443 E. 34th Street, Tucson, Arizona, his usual place of abode, by service upon Dwayne Reed, his stepbrother, a person of suitable age and discretion, residing therein." Although appellant concedes that such service is authorized by Rule 4(d) of the Arizona Rules of Civil Procedure, 16 A.R.S., his attorney, who was hired by Balboa Insurance Company to defend this action, now contends that his usual place of abode was not 443 E. 34th Street, Tucson. To support this contention in the trial court, the attorney for the appellant presented to the court an affidavit signed by appellant's grandmother. In her affidavit she stated, *inter alia,* that she owns rental property at 443 E. 34th Street, Tucson, Arizona, consisting of duplex apartments and a mobile home; that although at one time appellant did live at that address, he hadn't lived there for quite some time; that about September 1, 1970, appellant approached her and asked her for $10 for the purposes of buying groceries, stating that he was living with a woman in Tucson; and, that for the past year she has seen him occasionally and asked him where he was living but he would never tell her. She also stated that in August, while Dwayne Reed was visiting her in her mobile home, a man came and asked for Robert Mayhew; that she advised the man that Robert Mayhew did not live there; that Dwayne Reed then volunteered that he saw Robert Mayhew occasionally and the man then handed what appeared to be legal papers to Dwayne Reed and asked him to give them to Robert when he next saw Robert; that Dwayne Reed agreed to this and that Robert Mayhew, the appellant, appeared about two days later and when the papers were given to him he said, "they're just junk" and threw them back on the table.

Diametrically opposed to the affidavit was the deposition of appellant which was presented to the trial court. In his deposition, during which he was subjected to cross-examination, appellant stated that on the date that the process server gave the summons and complaint to his half brother he was living at the 443 E. 34th Street address. He stated that that is where he kept all of his personal belongings and that he had always lived there on and off since elementary school. He further testified that although after the accident in May of 1969, he went to Detroit for a while, he stayed only nine or ten months but returned to Tucson; that although he had lived in other places in Tucson when he returned from Detroit, (for example he lived with a girlfriend at another address for approximately a month) his usual place of abode was the 34th Street address where he lived in the other side of the duplex occupied by his half brother Dwayne. During July and August of 1970, the appellant testified that he did not sleep every night in the duplex.

The trial court was thus faced with this conflicting evidence. It is a well established rule of law that the return of service of process can be impeached only by clear and convincing evidence. Eldridge v. Jagger, 83 Ariz. 150, 317 P.2d 942 (1957). We believe that the evidence be-

fore the trial court on this question fell short of the standard set forth in Eldridge v. Jagger, supra, and that the trial court did not abuse its discretion in refusing to set aside the default and default judgment because of void service of process.

## THE FAILURE TO SET ASIDE ENTRY OF DEFAULT AND/OR DEFAULT JUDGMENT

In support of his motion to set aside the default and/or default judgment, appellant filed with the court the affidavit of Henry Wood, the adjuster for Lyle O'Keefe Adjustment Agency. In this affidavit Mr. Wood states that on June 12, 1970, he was contacted by attorney Joseph Soble advising him that he represented the three claimants; that he had received several telephone calls from attorney Soble and in each case the attorney was pressing him for an offer from the Balboa Insurance Company; that he advised Mr. Soble that no offer could be made until it was verified that Robert Mayhew had no independent insurance of his own, since if he did the Balboa policy would be excess, and until he could verify the medical information; that when he returned from vacation on July 21, 1970, he found a letter from attorney Soble which had attached to it an affidavit signed by Robert Mayhew in which Mayhew stated that he had no other insurance; that the "letter also mentioned a Complaint"; that he then called Mr. Soble who stated in substance as follows: "I gave Mayhew a copy of the complaint and asked that he get it over to the American Auto Rental, and maybe when you get this it will convince the company to make us an offer"; that he then called Bruce Meyer at the American Auto Rental to advise him to be on the lookout for the complaint; that Mr. Meyer never advised him that a complaint had been given to him; that he had dealt with Mr. Soble on many occasions and as a result of this experience he felt that Mr. Soble simply wanted the company to make an offer; that if in fact a complaint had been filed the same was filed only to encourage the company to

make an offer; that he never felt that Mr. Soble required an appearance or answer on behalf of Mayhew and therefore never notified Balboa Insurance Company that a complaint had been filed; that he continued with an investigation into the background of the claimants and felt that the claims were in somewhat inactive status when he left on September 9, 1970; and that he did not return until October 1, 1970, when he was advised that a default judgment had been taken in the matter. (The hearing on judgment was on September 14, 1970.)

Although appellant claims in his deposition that he did in fact deliver a copy of the complaint and summons to American Auto Rental, appellant offered the affidavits of all the persons who are employed by American Auto Rental at the time in question and all of the employees stated that at no time did Robert Mayhew ever deliver to any of them the summons or complaint.

The affidavit of Mr. Wood also had attached to it various correspondence in claim file between himself and Balboa Insurance Company. This correspondence contained a medical report written on September 10, 1969, by Dr. Jaime Vargas regarding appellee Rosemary McDougall, a medical report dated February 27, 1970, by Dr. Humberto Gonzales regarding appellee Rosemary McDougall, a medical report dated February 27, 1970, by Dr. Humberto Gonzales regarding appellee Max O'Donnal, and a medical report dated March 4, 1970, by Dr. Humberto Gonzales regarding appellee Filimon Chaboya.

Dr. Vargas' report on appellee Rosemary McDougall stated that Mrs. McDougall sustained a cervical sprain that has decreased considerably but that there was still some discomfort present. He anticipated that this discomfort would probably disappear within the next three to six months with a caveat that it is hard to make a prognosis since it is well known that this type of problem tends to recur at the slightest provocation. He therefore

did not make any suggestions in regard to cure, permanency or need for future medical treatment. The later medical report by Dr. Vargas diagnoses Mrs. McDougall's condition as "acute cervical strain, moderate; headache, traumatic in origin, cervical brachial syndrome, acute and affecting." His suggested treatment was symptomatic and supportive with a head halter traction, muscle relaxants, heat and analgesics for pain. His prognosis was "guarded."

Max O'Donnal was diagnosed by Dr. Humberto Gonzales on February 27, 1970, as having a low back sprain and cervical strain with potential nerve involvement. His suggested course of treatment was massage and muscle relaxant injections. His prognosis as to O'Donnal was also "guarded."

As to Filimon Chaboya, the March 4, 1970, medical report by Dr. Gonzales, diagnosed his condition as neck and back sprain. His suggested course of treatment was muscle relaxant injections, analgesics and physiotherapy. His prognosis was "good for recovery."

On June 12, 1970, in a letter to the adjuster, the attorney for the appellees made a demand for settlement. As to the appellee Chaboya, who suffered a loss of $870 in special damages, which included lost wages in the sum of $550, the demand was for $7,000. For appellee McDougall, who had special damages in the sum of $1,330.-81, the demand was $7,500. As for appellee O'Donnal, who has suffered special damages in the sum of $393.24, the demand was $3,750.

The prayer for relief of the complaint filed herein prays for damages for Rosemary McDougall in the sum of $35,000, for Max O'Donnal in the sum of $25,000 and Filimon Chaboya in the sum of $30,000. The minute entry of the proceedings of September 14, 1970, states:

"Max O'Donnal is sworn and examined.

It is Ordered that Pltf. Max O'Donnal have judgment against the Deft. in the sum of $25,000.

Rosemary McDougall is sworn and examined.

It is Ordered that Pltf. Rosemary McDougall have judgment against Deft. in the sum of $35,000.

Filimon Chaboya is sworn and examined.

It is Ordered that Pltf. Filimon Chaboya have judgment against Deft. in the sum of $30,000.

Mr. Cole is directed to prepare a written form of judgment for the Court's signature."

Appellant claims that neither American Auto Rental nor Balboa Insurance Company received notice of the filing of the lawsuit and that under the authority of Camacho v. Gardner, 104 Ariz. 555, 456 P.2d 925 (1969) he is entitled to have the default judgment and entry of default set aside.

While Camacho v. Gardner, supra, is authority for the general proposition of law advanced by appellant, we do not find it applicable to the factual situation of this case. Since September of 1969, Mr. Wood of the Lyle O'Keefe Adjustment Agency was acting for Balboa Insurance Company in the attempts to negotiate a settlement. We therefore believe that notice to Mr. Wood that a complaint had been filed was equivalent to notice to the Balboa Insurance Company itself. We find the excuse offered by Mr. Wood for not turning over the file to an attorney for filing an answer falls far short of the mistake, inadvertence surprise or excusable neglect required by Rule 60(c), Rules of Civ.Proc., 16 A.R.S. Furthermore, there is a complete absence of any showing of any meritorious defense as far as the liability is concerned. We therefore hold that the court did not err in refusing to set aside the entry of default.

However, as to the question of setting aside the default judgment, we believe other considerations are present.

What has happened in this case causes us great concern. It is readily apparent

**130**

that the court awarded the plaintiffs exactly what they prayed for in their complaint. This in and of itself would not be cause for reversal. But when, as here, it is combined with the fact that the plaintiffs had medical reports which were not introduced into evidence, plus the fact that after receiving the medical reports the plaintiffs were willing to settle for a fraction of the amount awarded in the default judgment, even though liability was so much in their favor, the amount awarded by the trial court shocks the conscience of this court.

Although Rule 55(b), Rules of Civ.Proc., 16 A.R.S., seems to speak in discretionary language, the rule is that when the amount of damages is unliquidated it is incumbent upon the court to conduct the hearing to determine the amount of damages. Davis v. National Mortgage Corp., 320 F.2d 90 (2d Cir. 1963). From our own knowledge, we note that this hearing is often conducted in a very perfunctory manner. In a personal injury case, if the defendant fails to answer, the trial court very often feels that defendants must be impecunious or that there is no insurance, so, why not give the plaintiff what he asks for? We do, however, wish to point out that the hearing on the default judgment is a judicial hearing which calls for the exercise of judicial discretion. When damages are unliquidated, simply giving the plaintiff what he asks for may not attain that level of judicial discretion which will pass appellate muster.

This brings us to another question. Can we refuse to set aside a default and yet set aside the default judgment, thus permitting appellant to contest the issue of damages only? We believe that we can. In Camacho v. Gardner, 6 Ariz.App. 590, 435 P.2d 719 (1967) we recognized the dual nature of the default and the default judgment and held that such could be done. Our Supreme Court, on review, vacated Camacho v. Gardner in 104 Ariz. 555, 456 P.2d 925 (1969). Our Supreme Court, however, did not negate the possibility that there might be situations wherein the entry of default could stand and a default judg-

ment could be set aside. This point was recognized by Judge Stevens in Rhodes Western v. Clarke, 14 Ariz.App. 62, 480 P.2d 677 (1971). Rule 55(c), Rules of Civ.Proc., 16 A.R.S., states that "[f]or good cause shown the court may set aside an entry of default and, if a judgment by default has been entered, may likewise set it aside in accordance with Rule 60(c)." Rule 60(c) (6) allows the court to relieve a party from a final judgment for "any other reason justifying relief from the operation of the judgment."

We hold that the trial court abused its discretion in failing to set aside the default judgment. The trial court is ordered to set aside the default judgment only; and proceed in a manner consistent with this opinion on the issue of damages.

KRUCKER, C. J., and HATHAWAY, J., concur.