836 P.2d 398

**GENERAL ELECTRIC CAPITAL CORPORATION, Plaintiff/Appellant,**

v.

**Elizabeth OSTERKAMP, Defendant/Appellee.**

No. 2 CA–CV 91–0185.

Court of Appeals of Arizona, Division 2, Department B.

Jan. 21, 1992.

As Amended on Denial of Reconsideration March 5, 1992.

Review Denied Sept. 22, 1992.*

---

* Zlaket, J., of the Supreme Court, recused himself and did not participate in the determination of this matter.

Norling, Oeser & Williams by Steven H. Williams and Darrell E. Davis, Phoenix, for plaintiff/appellant.

Molloy, Jones & Donahue, P.C. by David J. Diamond, Tucson, for defendant/appellee.

## OPINION

LACAGNINA, Judge.

In this appeal from orders setting aside default entered against Elizabeth Osterkamp and granting summary judgment in her favor, we must decide whether her counsel's misunderstanding of the effect of the 10–day grace period provided in Ariz. R.Civ.P. 55(a), 16 A.R.S., which resulted in his failure to file an answer within that period, is a sufficient reason for setting aside the default and the judgment under Ariz.R.Civ.P. 60(c)(1), 16 A.R.S. We hold that it is not and reverse.

## FACTS AND PROCEDURAL HISTORY

On December 29, 1988, General Electric Capital Corporation filed a complaint against Nogales Hotel Properties Limited Partnership, doing business as Rio Rico Resort, for breach of a lease agreement between Nogales Hotel Properties and RCA Corporation, General Electric's prede-

cessor in interest. On October 16, 1989, General Electric filed an amended complaint naming as defendants Horst and Elizabeth Osterkamp, husband and wife, in their capacity as general partners of Nogales Hotel Properties.[1] On November 18, Elizabeth was personally served in California. On December 27, default was entered against Elizabeth, and in accordance with Rule 55(a)(2), it became effective if an answer was not filed by the end of the day on January 11, 1990.

On January 5, 1990, Hugh Knowlton, Elizabeth's California attorney, had a telephone conversation with Steven Williams, General Electric's attorney, from which Knowlton claims he understood that Williams had given Elizabeth until January 19 to retain Arizona counsel before he would file a motion for default judgment. Knowlton also claims that he understood from the conversation that Williams would accept either an answer being filed by that date, or an Arizona attorney representing Elizabeth contacting him by that date. In a letter to Elizabeth, Knowlton stated that Williams had told him "that he would not file the motion to enter defaults against [Elizabeth] until January 19, which should give you sufficient time to retain counsel. He also said that if he received confirmation from [Arizona counsel] prior to January 19 that such counsel has been retained by you in connection with the two cases,[2] that would be sufficient reason for him to delay filing the motion for entry of defaults."

Williams stated in his affidavit that he spoke with Knowlton on January 5 and advised him that default had been entered against Elizabeth and that a motion for judgment by default would soon follow. Williams also stated that as a "professional courtesy" he would delay filing the motion for default judgment until January 19. He added, however, that he "did not agree to recognize as valid an answer by any defen-

1. Although Horst Osterkamp and Nogales Hotel Properties were also defendants in the trial court and were represented by the same attorney as Elizabeth during the time period at issue in this appeal, Elizabeth is the only defendant on appeal.

2. General Electric also filed an action against Elizabeth in Pima County Superior Court for breach of an equipment lease agreement involving another hotel owned by the partnership.

dant, in plain recognition of the fact that defaults of all defendants had already been entered."

On January 5, Knowlton contacted a Tucson attorney (Arizona counsel), who later agreed to represent Elizabeth. On January 8, Arizona counsel received the summons and complaint and a copy of the application for entry of default, giving him three days in which to answer during the 10–day grace period. On January 11, the last day in which to answer, Arizona counsel and Williams had two or three telephone conversations. The first conversation was at about 3 p.m. Arizona counsel claims that during this conversation Williams confirmed that Elizabeth had an extension of time to file an answer until January 19 and extended the time to January 22. According to Arizona counsel, Williams stated that he was not sure whether default had been entered against Elizabeth. It is undisputed that during the second conversation Arizona counsel learned he no longer had whatever "extension" he believed Williams had granted.

Williams stated in his affidavit that at this point Arizona counsel told Williams that in his opinion, even if default had been entered against Elizabeth and even if the rule's 10–day grace period had run, his answer would still be valid if it was filed before Williams filed a motion to enter judgment by default. Arizona counsel has never disputed this fact in either of his affidavits. Williams also stated in his affidavit that he told Arizona counsel that under the rule a default is effective 10 days after the application for entry of default is filed and that once the grace period expires, a party must establish good cause, which includes a showing of both excusable neglect and a meritorious defense, before the default will be set aside. According to Williams, Arizona counsel believed this was a legal question, the subject of a motion to be filed with the court. Arizona counsel made this argument to the superior court in support of the motion to set aside default. In addition, Williams claimed that Arizona counsel requested and Williams agreed to delay the filing of any motion for judgment by default because Arizona coun-

sel was leaving the state the next day and would not return until January 18. Williams made it clear, however, that under no circumstances would he stipulate to set aside the entry of default.

The last telephone conversation took place at approximately 4 p.m. on January 11 when Williams called Arizona counsel to confirm the date on which default was entered against Elizabeth. Arizona counsel admits in his affidavit that he knew at this point that default had been entered on December 27, making that day, January 11, the last day to file an answer within the 10–day grace period. In his affidavit, Williams stated that Arizona counsel then repeated his belief that any answer filed prior to a motion for judgment by default is valid. Williams claims that he again advised Arizona counsel that the rule states otherwise.

On January 12, Williams sent Arizona counsel a letter confirming his agreement not to file a motion for judgment by default until 12 days after Arizona counsel's return from his trip. In addition, Williams confirmed that he had told Arizona counsel that he "would not stipulate to setting aside the entry of default against any defendant and advised [him] that my position is that all defaults in these actions are effective and cannot be set aside unless good cause is shown in accordance with Rule 55(c)."

Arizona counsel stated in his affidavit that he had initially relied on the extension he thought Williams gave to Knowlton and did not file an answer on January 11. According to Arizona counsel, by the time Williams "changed his position," it was too late to prepare and file an answer on January 11. Arizona counsel also admitted that he knew January 11 was the last day to answer within the 10–day grace period. Arizona counsel concludes his affidavit by stating that "given the fact that Defendants believed they had until January 19 to file an Answer, it was not imprudent to utilize available time to undertake investigation and research before filing an Answer; and it was not imprudent to wait until January 19, 1990, to file the Answer."

On January 19, 1990, Arizona counsel filed an answer on behalf of Elizabeth. On January 29, he filed a motion to set aside entry of default. Admitting he knew January 11 was the last day to answer within the 10–day grace period, Arizona counsel argued:

> Defendants also argue that, since their Answer was filed prior to any Motion for Default Judgment, no Judgment can be taken, and the Answer must be recognized as valid. Rule 55(b) states that a Judgment can be taken against a Defendant for "failure to appear." Here *all* Defendants have appeared. Thus, no Judgment can be entered and, inferentially, the Answer must be accepted as valid. Certainly, there is no rule authorizing Judgment to be taken where an Answer has been filed. Given the presumption in Arizona that defaults are not favored, this must mean that an Answer filed even after Entry of Default, but before Motion for Judgment, is valid. In any case, the rules certainly do not indicate to the contrary. Without clear authorization, no Judgment can be taken and the Answer filed must therefore be valid. [citation omitted].

The trial court granted Elizabeth's motion to set aside entry of default finding as follows: "Plaintiff assert[s] there was no agreement to extend time in which defendants could file answers in this case. Defendants argue they need only prove they had a reasonable belief that an extension existed." Elizabeth's later motion for summary judgment was also granted; the case was dismissed and she was awarded her attorneys' fees. General Electric appeals from that judgment.[3, 4]

## STANDARD OF REVIEW

██ In general, the decision whether to set aside an entry of default is left to the sound discretion of the trial court and our review is limited to a finding of a clear abuse of that discretion. *Richas v. Superi-*

*or Court,* 133 Ariz. 512, 652 P.2d 1035 (1982); *State ex rel Corbin v. Marshall,* 161 Ariz. 429, 778 P.2d 1325 (App.1989). If a court's decision is based upon "a determination of disputed questions of fact or credibility, a balancing of competing interests, pursuit of recognized judicial policy, or any other basis to which we should give deference," *City of Phoenix v. Geyler,* 144 Ariz. 323, 329, 697 P.2d 1073, 1079 (1985), we will not second-guess or substitute our judgment for that of the trial court. *Id.* However, where the facts are not disputed, and "there are few or no conflicting procedural, factual or equitable considerations, the resolution of the question is one of law or logic." *Id., quoting State v. Chapple,* 135 Ariz. 281, 297 n. 18, 660 P.2d 1208, 1224 n. 18 (1983). In such cases, we must, if appropriate, substitute our judgment for that of the trial court, and if the trial court vacated entry of default without legal grounds, that constitutes an abuse of discretion. *Cockerham v. Zikratch,* 127 Ariz. 230, 619 P.2d 739 (1980).

## APPLICATION AND ENTRY OF DEFAULT

Prior to 1985, Rule 55(a) provided as follows:

> 55(a) Entry. When a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend as provided by these Rules and that fact is made to appear by affidavit or otherwise, the clerk shall enter his default.

While this rule was in effect, certain equitable considerations governed the trial court's determination of whether to set aside an entry of default. Because the law favors resolution of cases on the merits, all doubts the trial court may have had about whether to vacate entry of default or a default judgment were to be resolved in favor of the moving party. *Daou v. Harris,* 139 Ariz. 353, 678 P.2d 934 (1984); *Richas v. Superior Court, supra.* The

---

3. We note that even though the entry of default is not an appealable order, we have jurisdiction and may consider the issues presented in the appeal from the judgment ultimately rendered.

4. Appellee's counsel on appeal succeeded appellee's "Arizona counsel" after the defaults were entered.

good cause which the defaulting party must show before a default under Rule 55(c) will be set aside is the same as that required for obtaining relief from a judgment by default. *Webb v. Erickson,* 134 Ariz. 182, 655 P.2d 6 (1982). However, case law under the prior rule required that the trial court give the defaulting party the benefit of the doubt in making a case-by-case determination as to what constituted mistake, inadvertence, surprise or excusable neglect sufficient to set aside an entry of default or judgment by default for good cause shown. *See* Ariz.R.Civ.P. 55(c) and 60(c)(1), 16 A.R.S. The prior rule did not require that a defendant be given notice that default was to be entered, and consequently, lack of notice was frequently a basis for motions to set aside the entry of default. Having no notice other than the summons itself that default was to be entered, a defendant could readily establish the mistake, inadvertence, surprise, or excusable neglect necessary for setting aside such an order.

■ In 1985, Rule 55(a) was amended. The rule now provides as follows:

55(a) **Application and entry.** When a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend as provided by these Rules, the clerk shall enter that party's default in accordance with the procedures set forth below. All requests for entry of default shall be by written application to the clerk of the court in which the matter is pending.

(1) *Notice.*

(i) To the Party. When the whereabouts of the party claimed to be in default are known by the party requesting the entry of default, a copy of the application for entry of default shall be mailed to the party claimed to be in default.

(ii) Represented Party. When a party claimed to be in default is known by the party requesting the entry of default to be represented by an attorney, whether or not that attorney has formally appeared, a copy of the application shall also be sent to the attorney for the party claimed to be in default. Nothing herein shall be construed to create any obligation to undertake any affirmative effort to determine the existence or identity of counsel representing the party claimed to be in default.

(iii) Whereabouts of Unrepresented Party Unknown. If the whereabouts of a party claimed to be in default are unknown to the party requesting the entry of default and the identity of counsel for that party is also not known to the requesting party, the application for entry of default shall so state.

(2) *Effective Date of Default.* A default entered by the clerk shall be effective ten (10) days after the filing of the application for entry of default.

(3) *Effect of Responsive Pleading.* A default shall not become effective if the party claimed to be in default pleads or otherwise defends as provided by these Rules prior to the expiration of ten (10) days from the filing of the application for entry of default.

(4) *Applicability.* The provisions of this rule requiring notice prior to the entry of default shall apply only to a default sought and entered pursuant to this rule.

The addition of the 10–day grace period to the rule gives the defaulting party the benefit of the doubt discussed in case law by giving that party a second chance. Under the amended rule, the defaulting party can obtain relief without having to show good cause and without any action by the trial court, as would have been required under the old rule, simply by filing an answer within the 10–day grace period. It essentially extends the time to answer under Rule 12(a).

■ Because the amended rule gives the defaulting party an automatic second chance, if that party fails to take advantage of the opportunity to prevent the default from becoming effective, it is only logical that the party will have a greater burden in establishing a basis for setting aside the default than before the rule was amended. The amended rule virtually eliminates any claim of lack of notice as a basis

for setting aside a default. *See* Ariz. R.Civ.P. 55(a)(2), 16 A.R.S.; *see also Corbet v. Superior Court*, 165 Ariz. 245, 798 P.2d 383 (App.1990). The defaulting party who fails to timely answer or otherwise defend after receiving the notice provided in the summons, plus the application for entry of default, will have greater difficulty in showing that such failure was the result of excusable neglect. All equitable considerations having been encompassed in the amendment, once the 10–day grace period has passed and the party still fails to plead or otherwise defend, the defaulting party's burden and the trial court's duty should be no different than for seeking relief from a final judgment under Rule 60(c).

## APPLICATION OF RULE 60(c)

Keeping these principles in mind, we now consider whether the trial court abused its discretion in setting aside the entry of default. Arizona counsel knew by January 11 that he would have to file an answer that day in order to file within the 10–day grace period. Yet he believed, notwithstanding his being informed by Williams twice to the contrary, that if an answer was filed before a motion for default judgment, no judgment could be taken and the answer would have to be recognized as valid. Indeed, every action taken by Arizona counsel in this case was consistent with that belief. Believing that he had until January 30 to file an answer, that being the date Williams intended to file a motion for judgment by default, Arizona counsel did not file an answer late on the afternoon of January 11. Nor did he file an answer the next day. Even after receiving Williams' January 12 letter confirming that the default was effective, that Williams would not stipulate to setting aside the entry of default, and asking Arizona counsel to advise Williams if Arizona counsel understood the conversation differently, he still did not contact Williams or file an answer. The only reasonable inference we are able to draw from this conduct is that Arizona counsel believed that if he filed an answer before Williams filed a motion for entry of judgment by default, the answer must be considered valid. This belief was also the basis of his motion to set aside the entry of default. The trial court's granting of the motion on the ground that Arizona counsel "had a reasonable belief that an extension existed," is erroneous as a matter of law.

■ A trial court's discretionary finding of fact based on no evidence is arbitrary and an abuse of discretion. The trial court must have facts upon which to exercise its discretion. *United Imports and Exports, Inc. v. Superior Court*, 134 Ariz. 43, 653 P.2d 691 (1982). There was no evidence from which the trial court could have concluded that counsel had a *reasonable* basis for believing that an extension existed. It is undisputed that Arizona counsel knew that he had to file an answer by January 11 in order to file within the 10–day grace period. His failure to do so was based on a misunderstanding of the rule.

■ Ignorance of the rules of civil procedure is not the type of excuse contemplated in Rule 60(c) as a sufficient ground for vacating entry of default or default judgment. *Daou v. Harris*, 139 Ariz. at 359, 678 P.2d at 940. *See also State ex rel. Corbin v. Marshall, supra.* Unfortunately, Elizabeth cannot distance herself from Arizona counsel's actions in this case because the fault of the attorney is attributable to the client, and only when the attorney's failure or refusal to act is legally excusable will relief be obtained under Rule 60(c). *United Imports and Exports, Inc. v. Superior Court*, 134 Ariz. at 46, 653 P.2d at 694.

Because we find that Arizona counsel's actions in this case constitute neither excusable neglect nor any other basis for setting aside the default, we reverse the orders setting aside the default, entering summary judgment in Elizabeth's favor and awarding attorneys' fees. In light of our decision, we need not consider the other issues raised on appeal, including whether Elizabeth satisfied the further requirements of prompt action and a meritorious defense.

Reversed and remanded for proceedings consistent with this opinion. General Electric is awarded attorneys' fees on appeal upon filing the proper affidavits pursuant to Ariz.R.Civ.App.P. 21(c), 17B A.R.S.

FERNANDEZ, P.J., and HATHAWAY, J., concur.