994 P.2d 1030

**David HILGEMAN and Elizabeth Renee Hilgeman, husband and Defendant/Appellant.**

**v.**

**AMERICAN MORTGAGE SECURITIES, INC., a Florida corporation, Defendant/Appellant.**

No. 2 CA–CV 98–0236.

Court of Appeals of Arizona, Division 2, Department A.

Jan. 27, 2000.

216

Fitzgibbons Law Offices, P.L.C. By Michele E. Emig and David A. Fitzgibbons III, Casa Grande, Attorneys for Plaintiffs/Appellees.

Law Offices of A. Thomas Cole By Terry J. Fong, Casa Grande, Attorneys for Defendant/Appellant.

## OPINION

PELANDER, Presiding Judge.

¶ 1 Defendant/appellant American Mortgage Securities (AMS) appeals from the trial court's order denying AMS's motion to set aside a default judgment entered against it pursuant to Rules 54(b) and 55(b)(2), Ariz. R. Civ. P., 16 A.R.S. The judgment awarded $900,000 in compensatory and punitive damages to plaintiffs/appellees David and Elizabeth Hilgeman on their complaint.

¶ 2 Because the trial court did not clearly abuse its discretion in finding that AMS had been properly served with process, we affirm that aspect of the court's order which declined to set aside the judgment as void under Rule 60(c)(4), Ariz. R. Civ. P. We also affirm the trial court's denial of relief under Rule 60(c)(6), Ariz. R. Civ. P., insofar as AMS's liability, the compensatory damage award against it, and the Hilgemans' entitlement to punitive damages are concerned. But because of the unique constitutional safeguards relating to punitive damage awards and because the record is insufficient for us to evaluate or uphold that award, we vacate that aspect of the trial court's order and remand for a reported evidentiary hearing on the amount of punitive damages to be assessed against AMS.

## BACKGROUND

¶ 3 The Hilgemans alleged in their complaint, and the trial court found in its judgment, the following facts. In September 1996, the Hilgemans purchased a home in Pinal County and secured it with a mortgage from AMS, a Florida corporation. Shortly thereafter, but before the first payment was due, AMS assigned, transferred, or sold the mortgage to Flagstar Bank, F.S.B. Claiming they did not receive notice of the transfer, the Hilgemans sent their first mortgage payment to AMS rather than Flagstar. AMS negotiated the check and did not notify or forward that payment to Flagstar.

¶ 4 In November 1997, the Hilgemans sued Flagstar and AMS, alleging various tort theories and violations of 12 U.S.C. § 2605. The Hilgemans sought unspecified compensatory and punitive damages allegedly resulting from AMS's failure to send their first mortgage payment to Flagstar and from AMS's acceptance of that payment and failure to credit their account. According to an affidavit of service in the record, a deputy sheriff in Florida served "Larry Bache, President" of AMS at its office in Florida on November 25. When AMS failed to answer

the complaint or otherwise timely appear in the action, the Hilgemans applied for entry of default against it on January 28, 1998, pursuant to Rule 55(a), Ariz. R. Civ. P. The application stated that a copy of it was mailed that same date to "Larry Bache, President" at two different addresses for AMS in Florida, including the address where he had been served. The trial court entered default against AMS on January 28.

¶ 5 Several weeks later, the Hilgemans requested a hearing for purposes of obtaining a default judgment. Following an unreported evidentiary hearing on March 16, 1998, at which only Mr. Hilgeman testified, the trial court entered a default judgment against AMS. The judgment stated, inter alia, that AMS had breached fiduciary duties and an implied covenant of good faith and fair dealing; "[a]s a direct and proximate result of the breaches of [those] ... dut[ies] ... [the Hilgemans] have suffered or incurred damages for emotional distress, humiliation, invasion of privacy, damage to their credit record and reputation, defamation, severe stress resulting in physical injury, medical bills and other damages"; and AMS's "conduct was outwardly aggravated, outrageous, malicious, and/or fraudulent, and committed with an 'evil mind', entitling [the Hilgemans] to recover punitive damages." The trial court awarded the Hilgemans $180,000 in compensatory damages, $720,000 in punitive damages, and approximately $4,000 in attorney's fees and costs.

¶ 6 In June 1998, after its Florida statutory agent had been served with Flagstar's cross-claim, AMS moved to set aside the default judgment pursuant to Rule 60(c)(4) and (6), primarily contending the judgment was void for lack of proper service. The trial court denied AMS's motion. After this court stayed AMS's appeal from that ruling and revested jurisdiction to allow the trial court to rule on unresolved issues it had raised relating to the punitive damage award, and after the parties submitted supplemental memoranda on those issues, the trial court denied AMS's renewed request to set aside that award. We have jurisdiction under A.R.S. § 12–2101(C). *See Rosen v. Bd. of*

*Med. Exam'rs,* 185 Ariz. 139, 142, 912 P.2d 1368, 1371 (App.1995).

## DISCUSSION

¶ 7 AMS contends it was entitled to relief under Rule 60(c)(4) because the default judgment was void due to improper service; equity required the trial court to set aside the judgment under Rule 60(c)(6); and the punitive damage award was unconstitutional and excessive. Although "it is a highly desirable legal objective that cases be decided on their merits," we review the trial court's refusal to set aside a default judgment only for "a clear abuse of discretion." *Hirsch v. Nat'l Van Lines, Inc.,* 136 Ariz. 304, 308, 666 P.2d 49, 53 (1983); *see also General Elec. Capital Corp. v. Osterkamp (General Elec. I),* 172 Ariz. 185, 188, 836 P.2d 398, 401 (App.1992). Additionally, "[i]f a court's decision is based upon 'a determination of disputed questions of fact or credibility, a balancing of competing interests, pursuit of recognized judicial policy, or any other basis to which we should give deference,' we will not second-guess or substitute our judgment for that of the trial court." *General Elec. I,* 172 Ariz. at 188, 836 P.2d at 401, *quoting City of Phoenix v. Geyler,* 144 Ariz. 323, 329, 697 P.2d 1073, 1079 (1985).

## I. Propriety of Service

¶ 8 In denying AMS's motion to set aside the default judgment under Rule 60(c)(4), the trial court found that "the evidence support[ed] that service was properly made on an agent of the company known as Larry Bache, and that AMS has failed to overcome the Affidavit of Service filed herein." AMS challenges that ruling. If a defendant is not properly served with process, any resulting judgment is void and must be vacated upon request. *Marquez v. Rapid Harvest Co.,* 99 Ariz. 363, 365, 409 P.2d 285, 287 (1965); *Martin v. Martin,* 182 Ariz. 11, 14, 893 P.2d 11, 14 (App.1994). Under Rule 4.2(h), Ariz. R. Civ. P., service on a corporation located outside Arizona "shall be made on one of the persons specified in Rule 4.1(k)." That rule, in turn, provides that "[s]ervice upon a ... foreign corporation ... shall be effected by delivering a copy of the

summons and of the pleading to a partner, an officer, a managing or general agent, or to any other agent authorized by appointment or by law to receive service of process." Ariz. R. Civ. P. 4.1(k). Under Florida law, service is authorized "on any employee at the corporation's place of business" if the registered agent is not available when he should be under the statutes. *See* Fla. Stat. §§ 48.081(3), 48.091(2) (West, WESTLAW through end of 1999 1st Reg. Sess.).

¶ 9 AMS contends the Hilgemans failed to comply with Arizona's service requirements in the following respects: (1) they did not serve the person "registered with the Florida Department of Corporations as the [statutory] agent to receive service of process for AMS," J.R. Stirling, who also was AMS's president; (2) Bache, "even if he was served," was "not an officer, ... a managing or general agent ... an agent authorized by appointment or by law to receive service of process," or "an employee of AMS," but rather "was an independent contractor" who "never represented himself to be an officer of AMS and did not represent himself as such" to the process server; and (3) Bache "does not recall being served with this lawsuit" and, had he been served, he "would have remembered it and would have handed it to J.R. Stirling."

■ ¶ 10 In support of those contentions, AMS relies primarily on Bache's deposition and on Stirling's affidavit and deposition testimony that Bache was not an officer of AMS. But, contrary to AMS's repeated assertions, the evidence relating to this issue is far from "undisputed." Rather, "[v]iewing the facts in the strongest light possible in favor of supporting the trial court's decision," *Daou v. Harris*, 139 Ariz. 353, 360, 678 P.2d 934, 941 (1984), we find substantial evidence that the Hilgemans properly served AMS through its agent, Bache.

¶ 11 First, the affidavit of service clearly states that the Florida deputy sheriff served "Larry Bache, President" at AMS's office. Second, that process server testified in deposition that, according to his records, he previously had served Bache as an officer of the company. Third, a letter that AMS purportedly had sent to the Hilgemans in September

1996, advising them of the change in mortgage holder, identified "Larry Bache[,] Vice–President" as the sender. Fourth, AMS's motion to set aside the default judgment and Stirling's affidavit specifically referred to Bache as "an employee" of AMS, contrary to its current position. Finally, an AMS employee testified in deposition that Bache worked full-time for AMS and occasionally signed checks for the company.

¶ 12 Thus, substantial evidence established that AMS had identified Bache as an officer or employee of the company even if, as AMS urges, he did not officially have that status. At a minimum, the record reflects that Bache was, at least ostensibly, an officer or employee of AMS and, as such, "authorized ... by law to receive service of process." Ariz. R. Civ. P. 4.1(k). *See Koven v. Saberdyne Sys.*, Inc., 128 Ariz. 318, 322, 625 P.2d 907, 911 (App.1980) ("the phrase agent authorized by law to receive service of process [under former Rule 4(d)(6) ] is sufficiently broad [ ] to permit service through an ostensible agent"). Although Rule 4.1(k) did not require the Hilgemans to serve Stirling, AMS's statutory agent, the Florida deputy sheriff attempted to serve him in accordance with Florida law but was told by an AMS employee that Stirling was unavailable.

¶ 13 As noted above, the record also reflects that a copy of the Hilgemans' application for entry of default was mailed on January 28, 1998, to "Larry Bache, President" at two different addresses for AMS, pursuant to the requirements of Rule 55(a)(1)(i), Ariz. R. Civ. P. Similarly, a copy of the Hilgemans' application for default judgment was sent to AMS. AMS does not contend that it never received the notices or that the addresses to which they were sent were incorrect. The Hilgemans' apparent compliance with the requirements of Rule 55 "virtually eliminates any claim of lack of notice as a basis for setting aside [the] default." *General Elec. I*, 172 Ariz. at 189–90, 836 P.2d at 402–03.

¶ 14 "Service of process can be impeached only by clear and convincing evidence." *General Elec. Capital Corp. v. Osterkamp (General Elec. II)*, 172 Ariz. 191, 194, 836 P.2d 404, 407 (App.1992). *See also Riggs v. Huachuca Inv. Co.*, 2 Ariz.App. 527, 529, 410

P.2d 149, 151 (App.1966) ("[P]roof of a clear and convincing nature [is required] to overturn the presumption of service."). Although AMS presented some evidence to support its position that it had not been properly served, we cannot say the trial court abused its discretion in implicitly finding that evidence less than "clear and convincing." *See Mayhew v. McDougall,* 16 Ariz.App. 125, 127–28, 491 P.2d 848, 850–51 (1971). A contrary conclusion would require us to "second-guess or substitute our judgment for that of the trial court" on questions of disputed fact. *General Elec. I,* 172 Ariz. at 188, 836 P.2d at 401. Because "the facts of the case" provide "tenable grounds," "apparent in the record," for the trial court's ruling, *Geyler,* 144 Ariz. at 330, 697 P.2d at 1080, and because the record contains "evidence [that] provided the trial court with a reasonable basis for rejecting [AMS's] assertion of inadequate notice due to insufficient service of process," *General Elec. II,* 172 Ariz. at 195, 836 P.2d at 408, the court did not abuse its discretion in finding that AMS had been properly served and, therefore, denying its motion to set aside the default judgment as void under Rule 60(c)(4).

## II. Claim for Relief Under Rule 60(c)(6)

¶ 15 AMS next contends the trial court should have set aside the judgment "for any other reason justifying relief from the operation of the judgment" under Rule 60(c)(6). "In order to obtain relief under 60(c)(6), the movant must show 1) extraordinary circumstances of hardship or injustice justifying relief and 2) a reason for setting aside the judgment other than one of the reasons set forth in the preceding five clauses of rule 60(c)." *Davis v. Davis,* 143 Ariz. 54, 57, 691 P.2d 1082, 1085 (1984). In addition, unlike a motion that seeks relief from a void judgment under Rule 60(c)(4), a motion for relief under Rule 60(c)(6) must be brought "within a reasonable time." Ariz. R. Civ. P. 60(c). *See Brooks v. Consolidated Freightways Corp.,* 173 Ariz. 66, 71, 839 P.2d 1111, 1116 (App.1992). In other words, a defaulted defendant must show that "it acted promptly in seeking relief from the entry of default." *Richas v. Superior Court,* 133 Ariz. 512, 514, 652 P.2d 1035, 1037 (1982). The trial court has discretion to determine

whether the delay in filing the motion to set aside was reasonable. *Brooks,* 173 Ariz. at 71, 839 P.2d at 1116.

¶ 16 Despite apparently having received the Hilgemans' applications for entry of default and for default judgment, *see* ¶ 13, AMS alleged that it first learned of the default judgment approximately six weeks after its entry, when Stirling was served with Flagstar's cross-claim. AMS then instructed its counsel to move to vacate the judgment, which he did approximately four weeks later. Although the moving party is "required to show good reason for his failure to take appropriate action sooner" and should offer "some explanation of the delay in seeking relief," "where no intervening rights have attached in reliance upon the judgment, any doubt should be resolved in favor of securing a trial upon the merits." *Marquez,* 99 Ariz. at 365–66, 409 P.2d at 287–88.

¶ 17 The trial court here did not expressly address the issue but implicitly found that AMS had acted promptly or within a reasonable time in moving to set aside the default judgment. Similarly, we cannot say as a matter of law that AMS failed to do so even though its explanation for the delay was minimal. *See Staefa Control–System, Inc. v. St. Paul Fire & Marine Ins. Co.,* 875 F.Supp. 656 (N.D.Cal.1994) (three month delay between judgment and filing of motion under federal Rule 60(b) reasonable considering lack of prejudice to non-moving party among other factors); *Roll v. Janca,* 22 Ariz.App. 335, 338, 527 P.2d 294, 297 (1974) (defendants "acted expeditiously" when they moved to set aside default judgment one month after first learning of it); compare *Richas,* 133 Ariz. at 515, 652 P.2d at 1038 ("[s]ince delay is not explained [at all], there is no basis" for the court to find delay reasonable). We therefore consider whether AMS satisfied the other requirements for relief under Rule 60(c)(6).

¶ 18 In denying relief from the default judgment, the trial court ruled that AMS had offered "insufficient proof of the elements of excusable neglect and meritorious defense" and "no evidence that the [punitive] award ... [was] excessive." Because the punitive

damage award raises fundamental constitutional issues and unique concerns that differentiate it from the compensatory damage award, we address them separately.

## A. Compensatory damage award

■ ¶ 19 AMS contends the trial court should have exercised its "equitable powers" to set aside the default judgment in toto because (1) it was "grossly excessive and disproportionate to the alleged wrongdoing"; (2) there were "serious questions as to whether or not the Hilgemans properly served AMS"; (3) AMS moved to set the judgment aside as soon as it learned of it; and (4) "the Hilgemans themselves caused or contributed to their losses by not complying with AMS'[s] instruction in September 1996 to make all mortgage payments to Flagstar." We reject those assertions for several reasons.

¶ 20 First, AMS's challenge to the damage awards as excessive, apart from any constitutional concerns, is "in actuality ... [a] defense[ ] to the amount of damages awarded by the trial court," *Hirsch*, 136 Ariz. at 311, 666 P.2d at 56, which typically is "not subject to review" on appeal from a denial of a Rule 60 motion. *Id.* at 312, 666 P.2d at 57. Second, even if service on AMS had been improper, that would have rendered the judgment void under Rule 60(c)(4), a separate and mutually exclusive basis for setting aside a judgment. *Davis*, 143 Ariz. at 57, 691 P.2d at 1085; *Webb v. Erickson*, 134 Ariz. 182, 186, 655 P.2d 6, 10 (1982). Third, although the $180,000 compensatory damage award on its face appears high, in the absence of any transcript of the unreported hearing on entry of default judgment, we must presume the evidence supported the trial court's ruling. *Baker v. Baker*, 183 Ariz. 70, 73, 900 P.2d 764, 767 (App.1995); *Lewis v. Oliver*, 178 Ariz. 330, 338, 873 P.2d 668, 676 (App.1993). Fourth, AMS's comparative fault defense did not entitle it to relief under Rule 60(c)(6) in view of the Hilgemans' allegation and the trial court's finding that they had received no notice of the change in mortgagee.

■ ¶ 21 Finally, the only evidence AMS offered below related to the alleged impropriety of service. AMS offered no evidence to show that it was entitled to relief on any other ground, that its failure to timely answer was due to excusable neglect, or that it had a meritorious defense to the compensatory damage award. Although excusable neglect is not a prerequisite for obtaining relief from a judgment under Rule 60(c)(6), a court may consider that factor in determining whether to grant such relief under that rule. *See Webb*, 134 Ariz. at 188–89, 655 P.2d at 12–13; *see also Cline v. Ticor Title Ins. Co.*, 154 Ariz. 343, 347, 742 P.2d 844, 848 (App. 1987). Nor did AMS establish "extraordinary circumstances of hardship or injustice" to justify relief from the compensatory damage award. *Davis*, 143 Ariz. at 57, 691 P.2d at 1085. Because AMS "failed to provide sufficient facts to permit the trial court to exercise discretion to set aside" the compensatory damage award, *Richas*, 133 Ariz. at 517, 652 P.2d at 1040, we find no abuse of discretion in that aspect of its ruling.

## B. Punitive damage award

■ ¶ 22 We reach a different conclusion, however, as to the $720,000 punitive damage award in this case. Punitive damages are those damages "awarded in excess of full compensation to the victim in order to punish the wrongdoer and to deter others from emulating his conduct." *Linthicum v. Nationwide Life Ins. Co.*, 150 Ariz. 326, 330, 723 P.2d 675, 679 (1986). "In deciding whether punitive damages are awardable, the inquiry should be focused upon the wrongdoer's mental state." *Id. See also Volz v. Coleman Co.*, 155 Ariz. 567, 570–71, 748 P.2d 1191, 1194–95 (1987). "To recover punitive damages, a plaintiff must prove by clear and convincing evidence that the defendant engaged in aggravated and outrageous conduct with an 'evil mind,'" *Hyatt Regency Phoenix Hotel Co. v. Winston & Strawn*, 184 Ariz. 120, 132, 907 P.2d 506, 518 (App.1995), that is, with intent "to injure or defraud, or deliberately interfere[ ] with the rights of others, 'consciously disregard[ing] the unjustifiabl[y] substantial risk of significant harm to them.'" *Id., quoting Linthicum*, 150 Ariz. at 331, 723 P.2d at 680.

■ ¶ 23 Considering the nature of evidence and the higher burden of proof

required for punitive damage awards, the making and preservation of a record, which is subject to appellate review, is preferred for cases in which punitive damages are sought, even in a default context. *See Verde Ditch Co. v. James*, 157 Ariz. 369, 373, 758 P.2d 144, 148 (App.1988) (review of record, which included testimonial and documentary evidence, revealed substantial evidence to support punitive damage award in default judgment). We encourage that practice. Unlike the court in *Verde Ditch,* on this record we cannot evaluate whether the Hilgemans presented sufficient evidence to warrant any punitive damage award, let alone one approaching three quarters of a million dollars.[1]

¶ 24 Nonetheless, many of the defects in AMS's argument relating to the compensatory damage award also plague its challenge to the punitive damage award. For example, AMS presented no evidence, just argument, to show how or why the punitive damage award is unwarranted, excessive, or inequitable. And, as noted above, in the absence of a transcript of the default judgment hearing, we must presume evidence supports the trial court's judgment. *Baker; Lewis.* In view of those deficiencies, we do not disturb the trial court's finding that the Hilgemans are entitled to an award of punitive damages. *Cf. In re Gober,* 100 F.3d 1195, 1205 (5th Cir.1996). The amount of that award, however, is another matter.

¶ 25 As it did in the trial court, AMS contends the punitive damage award is unconstitutional, an issue neither raised nor addressed in *Hirsch* or *Verde Ditch.* Notwithstanding the foregoing obstacles to AMS's argument, we cannot uphold the amount of the punitive damage award here absent any record to support it. The Hilgemans argue that AMS "does not know what the trial court actually considered before entering the judgment." But, unfortunately, neither do we. At the hearing on entry of default judgment, the Hilgemans' counsel expressly declined a court reporter. Conse-

quently, the only record available to evaluate the damage award is the trial court's minute entry of the default judgment hearing, at which only Mr. Hilgeman testified. The record thus contains no testimonial or documentary evidence relating to the Hilgemans' damage claims or to the damages awarded to them. This absence of a record to support the punitive damage award is significant, even in a default context, because of the constitutional limitations relating to such awards.

¶ 26 The Due Process clause of "the [U.S.] Constitution imposes a substantive limit on the size of punitive damages awards." *Honda Motor Co., Ltd. v. Oberg,* 512 U.S. 415, 420, 114 S.Ct. 2331, 2335, 129 L.Ed.2d 336, 342 (1994). *See also BMW v. Gore,* 517 U.S. 559, 574, 116 S.Ct. 1589, 1598, 134 L.Ed.2d 809, 826 (1996) ("Elementary notions of fairness enshrined in our constitutional jurisprudence dictate that a person receive fair notice not only of the conduct that will subject him to punishment, but also of the severity of the penalty that a State may impose."). To monitor that substantive limit, Arizona law "provides several procedural protections to assure that an award of punitive damages is justified and reasonable." *Hyatt Regency,* 184 Ariz. at 134, 907 P.2d at 520. *See also Pacific Mut. Life Ins. Co. v. Haslip,* 499 U.S. 1, 21–22, 111 S.Ct. 1032, 1045, 113 L.Ed.2d 1, 21–22 (1991). Specifically, before punitive damages may be awarded and upheld, "[t]he plaintiff must survive a motion for a directed verdict, the jury must exercise its discretion to award punitive damages, [and] the verdict is subject to post-trial motions and review by the trial judge." *Hyatt Regency,* 184 Ariz. at 134, 907 P.2d at 520. The award is then subject to careful review by an appellate court, which considers:

(1) the proportionality of the award to the wrongdoer's financial position to ensure that the goals of punishment and deterrence are served without financially devas-

---

1. We assume that the trial court based the punitive damage award on the Hilgemans' common law tort claims rather than on AMS's alleged violations of 12 U.S.C. § 2605, which only imposes liability for "actual damages to the borrow-

er as a result of [a mortgagee's] failure" to comply with statutory requirements. 12 U.S.C. § 2605(f)(1)(A). *See Katz v. Dime Sav. Bank, F.S.B.,* 992 F.Supp. 250 (W.D.N.Y.1997).

tating the defendant; (2) the reprehensibility of the defendant's conduct, including the duration of the misconduct, the defendant's awareness of the risk of harm, and any concealment; and (3) the profitability to the defendant of the wrongful conduct. *Id.*; *see also Haslip.*

¶ 27 The record in this case neither permits our evaluation of those factors nor reflects that the trial court considered them. Indeed, when the trial court initially denied AMS's motion to set aside the default judgment, it expressed "a reasonable uncertainty if [the punitive damage] amount is grossly excessive and unsupportable under both state and federal decisions." We share those concerns.

¶ 28 That the award was entered in a default context does not eliminate the need for effective appellate review of punitive damages to ensure they comport with constitutional standards.[2] That the trial court apparently awarded damages in amounts the Hilgemans requested and entered the default judgment immediately after the hearing had concluded also reduces our confidence level in the propriety of the punitive damage award's size. *See Mayhew*, 16 Ariz.App. at 130, 491 P.2d at 853 ("[S]imply giving the plaintiff what he asks for may not attain that level of judicial discretion which will pass appellate muster."); *cf. Dungan v. Superior Court*, 20 Ariz.App. 289, 290, 512 P.2d 52, 53 (1973) (the hearing on damages must be more than "a one-sided presentation by the party seeking the default judgment"). *Compare Daou*, 139 Ariz. at 361, 678 P.2d at 942 (no abuse of discretion when "trial court took the matter under advisement for twenty days before formulating an award [and] the court did not simply grant [plaintiff] what she [had] requested").

¶ 29 In view of the rigorous scrutiny given to punitive damage claims in a trial context and to punitive damage awards on appeal, it would be incongruous to give them less attention and scrutiny in a default context. Rather, when, as here, the record is inadequate for meaningful evaluation of the constitutionality of a punitive damage award, the award should be set aside. *See Watkins v. Lundell*, 169 F.3d 540, 545 (8th Cir.1999), *cert. denied*, —— U.S. ——, 120 S.Ct. 324, 145 L.Ed.2d 253 (1999) (review of punitive damage award "only by the judge who entered the [default] judgment ... does not comport with the Supreme Court's pronouncements"); *Beck v. Atlantic Contracting Co.*, 157 F.R.D. 61, 65 (D.Kan.1994) (requiring plaintiff to "establish that the amount requested [for punitive damages in default judgment] is reasonable under the circumstances" so as to "enable the court to make a reasonable determination as to the amount of punitive damages, if any, that should be awarded").

¶ 30 In sum, we find exceptional circumstances exist to justify setting aside the punitive damage award under Rule 60(c)(6). *See Webb.* The trial court's findings that "AMS failed to show any evidence of excusable neglect and/or a meritorious defense to support its Motion to Set Aside the punitive aspect of the Judgment" and that "no evidence [exists] that the award of $720,000.00 is excessive" do not alter our conclusion. Excusable neglect is specifically covered by Rule 60(c)(1) and not absolutely required for relief under Rule 60(c)(6). *See Cockerham v. Zikratch*, 127 Ariz. 230, 235, 619 P.2d 739, 744 (1980) ("motions for relief from final judgments based on neglect must be filed under Rule 60(c)(1), not 60(c)(6)"); *M & M Auto Storage Pool, Inc. v. Chemical Waste Management, Inc.*, 164 Ariz. 139, 142, 791 P.2d 665, 668 (App.1990) (relief under Rule 60(c)(6) not precluded by absence of excusable neglect). And, by basing its challenge to the punitive damage award not only on constitutional grounds but also on the September 1996 letter that it allegedly sent to inform the Hilgemans of the loan transfer and their need to send mortgage payments to Flagstar, AMS raised a sufficient meritorious defense, assuming that is a required element for relief under Rule 60(c)(6).

¶ 31 "In ruling on a Rule 60(c) motion, the exercise of the court's discretion must be

---

**2.** Although a party may waive constitutional issues by failing to raise them in the trial court, *see Hawkins v. Allstate Ins. Co.*, 152 Ariz. 490, 503, 733 P.2d 1073, 1086 (1987), we do not equate default with waiver particularly when, as here, the party raises the constitutional issue in seeking relief from the trial court under Rule 60(c).

supported by facts or sound legal policy." *Ulibarri v. Gerstenberger*, 178 Ariz. 151, 164, 871 P.2d 698, 711 (App.1993). The trial court's refusal to set aside the punitive damage award here is supported by neither. To let that ruling stand based on this record would be "harsh, rather than fair and equitable," *id.*, would unduly frustrate the "highly desirable legal objective that cases be decided on their merits" if possible, *Hirsch*, 136 Ariz. at 308, 666 P.2d at 53, and would disregard our obligation to determine whether the punitive damage award meets constitutional standards.

## DISPOSITION

¶ 32 We vacate that portion of the trial court's order in which it refused to set aside the punitive damage award in the default judgment, and we remand for a contested evidentiary hearing, on the record, on the amount of punitive damages that the Hilgemans should be awarded. *See Mayhew*, 16 Ariz.App. at 130, 491 P.2d at 853 (appellate court may uphold entry of default but set aside default judgment and permit defendant "to contest the issue of damages only"); *cf. Dungan*, 20 Ariz.App. at 291, 512 P.2d at 54 (defaulted defendant in Rule 55(b)(2) hearing should be permitted "to cross-examine and even present counterproof"). In all other respects, the trial court's order is affirmed. In our discretion, we deny AMS's request for an award of attorney's fees on appeal under A.R.S. § 12–341.01.

CONCURRING: WILLIAM E. DRUKE, Judge, and M. JAN FLÓREZ, Judge.