655 P.2d 6

**James WEBB, Plaintiff-Appellant,**

v.

**Carl S. ERICKSON and Nancy J. Erickson, husband and wife, Defendants,**

**and**

**James M. Bates,
Garnishee-Defendant-Appellee.**

**No. 15900–PR.**

Supreme Court of Arizona,
En Banc.

Nov. 2, 1982.

Rehearing Denied Dec. 7, 1982.

Lawrence J. Marks, Phoenix, for plaintiff-appellant.

Lebowitz & Frondorf by Shirley H. Frondorf, Phoenix, for garnishee-defendant-appellee.

FELDMAN, Justice.

At issue is whether the trial court erred in vacating a default judgment entered in favor of Appellant Webb and against Appellee Bates, a garnishee-defendant. The court of appeals held that the trial court's action was an abuse of discretion and reversed. *Webb v. Erickson*, 134 Ariz. 191, 655 P.2d 15 (App.1981). Bates petitioned this court for review. We have jurisdiction pursuant to Ariz. Const. art. 6, § 5, and Rule 23, Rules of Civil Appellate Procedure, 17A A.R.S.

On August 5, 1975, appellant Webb obtained a default judgment against Carl and Nancy Erickson in the amount of $5,000 plus interest, and $1,500 in attorneys' fees.

The judgment was based on two promissory notes and a check for insufficient funds executed by Erickson.

During 1975, Carl Erickson earned commissions by acting as the real estate agent in the sale of several houses. In order to collect on his judgment against Erickson, Webb caused several writs of garnishment to be served on parties whose houses had been sold by Erickson. One of these parties was Bates. On November 22, 1975, Webb served a summons and writ of garnishment on Bates at his home. The process served on Bates designated him as a garnishee-defendant in an action which was based upon the Webb/Erickson judgment.

In a subsequent affidavit, Bates stated that in November of 1975 he had just been released from the hospital after a seven-week stay resulting from injuries sustained in an industrial accident. During a two-year period, Bates had been hospitalized several times for treatment of pain and depression associated with the injury. In addition to his health problems, Bates was involved in divorce proceedings and subsequently lost custody of his two children.

Bates stated that in light of these conditions he did not clearly understand the process served on him in November of 1975. He assumed that the summons was not intended for him because he had never heard of James Webb and was not connected with any dispute between Webb and the Ericksons. While he probably knew that Carl Erickson was the real estate agent involved in the sale of his home, Bates was under the impression that the entire transaction was in escrow at the Minnesota Title Company at that time and that he had no control over payment of the real estate commission. As a result, Bates never answered the writ.

On February 27, 1976, Webb obtained a default judgment against Bates for the full amount of Webb's underlying judgment against Erickson pursuant to A.R.S. § 12–1583 (1956) (amended 1981).[1] No copy of

the default judgment was mailed to Bates. No execution was attempted.

Bates did not know that a judgment had been entered against him for the full amount of the Webb/Erickson judgment until more than three years later. In late March of 1979, Bates received a telephone call from Webb's attorney who informed him of the 1976 judgment, that interest had been accruing since that time and that Bates was "in trouble." The attorney told Bates that a reduction of the $6,500 judgment was possible if Bates would be willing to negotiate. Bates immediately contacted an attorney.

The record reflects that some negotiations took place between the parties after Bates was informed of the judgment, but no settlement was reached. On August 7, 1979, Webb served a writ of garnishment on Bates' employer, garnishing Bates' wages on the basis of the 1976 default judgment and seeking to collect the entire amount of Webb's judgment against the Ericksons.

On August 16, 1979, Bates filed a motion to vacate judgment pursuant to Rule 60(c), Rules of Civil Procedure, 16 A.R.S., and a motion to stay the execution of the judgment. After a response and oral argument, the superior court issued an order granting Bates' motion to vacate and set aside the default and quashing the writ of garnishment served on Bates' employer. A formal judgment to this effect was entered on September 19, 1979. Garnisher Webb appealed this decision to the court of appeals, which held that the trial court had abused its discretion, and reversed. Bates then petitioned this court for review. We granted review and now vacate the opinion of the court of appeals and affirm the judgment of the trial court.

■ Rule 55(c) of the Arizona Rules of Civil Procedure provides that an entry of default or judgment by default may be set aside "for good cause shown." The test of

---

1. Prior to the 1981 amendment, § 12–1583 read:

   If a garnishee fails to answer within the time specified in the writ, the court may, after judgment has been rendered against defendant, render judgment by default against the garnishee for the full amount of the judgment against defendant.

good cause is the same for an entry or judgment of default. *DeHoney v. Hernandez,* 122 Ariz. 367, 371, 595 P.2d 159, 163 (1979). In order to obtain relief, Bates must show each of the following: (1) that his failure to answer was excused by one of the grounds set forth in Rule 60(c); (2) that he acted promptly in seeking relief from the entry of default; and (3) that he had a meritorious defense. *Richas v. Superior Court,* 133 Ariz. 512, 652 P.2d 1035 (1982).

### RELIEF UNDER RULE 60(c)

Rule 60(c) sets forth the grounds upon which a party may be relieved from a default judgment. Rule 60(c) provides, in part:

> On motion and upon such terms as are just the court may relieve a party ... from a final judgment, order or proceeding for the following reasons: (1) mistake, inadvertence, surprise or excusable neglect; (2) newly discovered evidence ...; (3) fraud ..., misrepresentation or other misconduct of an adverse party; (4) the judgment is void; (5) the judgment has been satisfied, released or discharged, or a prior judgment on which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application; or (6) any other reason justifying relief from the operation of the judgment. The motion shall be filed within a reasonable time, and for reasons (1), (2) and (3) not more than six months after the judgment, or order was entered or proceeding was taken.

■ The trial court did not specify which clause of 60(c) it relied upon in setting aside the default. In this situation, an appellate court may inquire into the applicability of any clause. *Roll v. Janca,* 22 Ariz.App. 335, 336, 527 P.2d 294, 295 (1974). Appellee Bates argues that relief was justified under clauses 4, 5 or 6 of Rule 60(c). Since we find that clause 6 authorized the action by the trial court, we need not consider clauses 4 or 5.

■ As noted above, Rule 60(c)(6) provides that a default judgment may be set aside for "any other reason justifying relief from the operation of the judgment." The wording of this clause places two separate limitations upon its application. First, the reason for setting aside the default must *not* be one of the reasons set forth in the five preceding clauses. Clause 6 and the first five clauses are mutually exclusive. *Dunn v. Law Offices of Ramon R. Alvarez,* 119 Ariz. 437, 439, 581 P.2d 282, 284 (App. 1978); *Sloan v. Florida-Vanderbilt Development Corp.,* 22 Ariz.App. 572, 576, 529 P.2d 726, 730 (1975); *see also Cockerham v. Zikratch,* 127 Ariz. 230, 235, 619 P.2d 739, 744 (1980). Second, the "other reason" advanced must be one which *justifies* relief. *Leahy v. Ryan,* 20 Ariz.App. 110, 112, 510 P.2d 421, 423 (1973); 7 *Moore's Federal Practice,* ¶ 60.27, at 343 (2d ed. 1982).

■ We must also recognize, however, the broad equitable power of Rule 60(c)(6). It has been stated that clause 6 "vests power in courts adequate to enable them to vacate judgments whenever such action is appropriate to accomplish justice." *Klapprott v. United States,* 335 U.S. 601, 615, 69 S.Ct. 384, 390, 93 L.Ed. 266 (1949) [2]; *Arizona State Dept. of Economic Security v. Mahoney,* 24 Ariz.App. 534, 536, 540 P.2d 153, 155 (1975); 11 Wright and Miller, *Federal Practice and Procedure* § 2864, at 211–12 (1973). We realize that clause 6 cannot be used to avoid the six-month limitation which applies to the first three clauses. This six-month limit was designed to ensure the finality of judgments; after six months the trial court's decision can no longer be attacked for the reasons specified in the first three clauses. *Dunn v. Law Offices of Ramon R. Alvarez, supra; Sloan v. Florida-Vanderbilt Development Corp., supra.* The need for finality, however, must give way in extraordinary circumstances. *Klapprott v. United States, supra.* Accordingly, clause 6 requires only that the motion be filed "within a reasonable time."

**2.** Rule 60(c) of the Arizona Rules of Civil Procedure is taken from Rule 60(b), Federal Rules of Civil Procedure. The portion of the rule at issue is identical to the federal rule.

We have examined the record, therefore, to determine whether the facts support the trial court's presumptive discretionary finding that the facts here go beyond the factors enumerated in clauses 1 through 5 of Rule 60(c) and raise extraordinary circumstances of hardship or injustice justifying relief under the residual provision in clause 6. We believe that extraordinary circumstances justifying relief exist in this case.

■ Bates was a defaulting garnishee. This court has held that more liberality should be shown in setting aside a judgment against a defaulting garnishee than in setting aside a judgment against a defaulting defendant. *Comision Monetaria v. Sonora Bank & Trust Co.*, 28 Ariz. 369, 372, 236 P. 1114, 1115 (1925); *Gutierrez v. Romero*, 24 Ariz. 382, 387, 210 P. 470, 472 (1922); *see also Riggs v. Huachuca Investment Co.*, 2 Ariz.App. 527, 410 P.2d 149 (1966). The reason for this rule was stated in *Gutierrez, supra:*

> The court should be even more liberal in allowing the belated garnishee to answer after default than in granting the privilege to an ordinary suitor defaulter, since he is a disinterested party in the proceedings, so far as any prospect of being benefited is concerned, yet an interested third person so far as the danger of being injured is concerned.

*Id.* 24 Ariz. at 387, 210 P. at 472 (quoting Waples, *Waples on Attachment and Garnishment* § 501 (2d ed.)).

Under Arizona law, a judgment can be entered against a defaulting garnishee for the full amount of the judgment against the defendant. A.R.S. § 12–1583. The necessary result of such a rule is that a defaulting garnishee often may become liable for a debt which is significantly greater than the debt allegedly owed to the defendant. In light of such a result, it is not difficult to see why the principles relating to the setting aside of default judgments are applied more liberally in the case of a garnishee. *See generally United Accounts, Incorp., Bismarck v. Palmer*, 141 N.W.2d 472, 473 (N.D.1966); *Queen City Electrical*

*Supply v. Soltis Electric Co.*, 491 Pa. 354, 361, 421 A.2d 174, 178 (1980); *cf. Hervey v. Farms, Inc.*, 252 Ark. 881, 882, 481 S.W.2d 348, 349 (1972); *Lyon Development Corp. v. Ricke's, Inc.*, 296 Minn. 75, 85, 207 N.W.2d 273, 279 (1973) (garnishers held to strict compliance with garnishment statutes).

■ The court of appeals rejected this argument because no distinction between defaulting garnishees and defendants expressly appears in the statutes or rules. We agree with the court of appeals that no such distinction is expressly made; however, the purpose of clause 6 is to enable trial courts to grant equitable relief from default whenever the circumstances are extraordinary and justice requires. *Roll v. Janca*, 22 Ariz.App. at 337, 527 P.2d at 296. The fact that Bates was held responsible for the full amount of another person's debt without a hearing on the merits is certainly a consideration that can properly be taken into account by the trial court in deciding whether to grant relief under clause 6.

■ The trial court could also have considered the confusing nature of the entire proceeding as well as the wording contained in the summons and writ served on Bates, a person who was not involved in and knew nothing about the dispute between Webb and Erickson.

The summons served on Bates read as follows:

> In obedience to the Writ of Garnishment served together with this Summons I do hereby summon and require you to appear and answer the accompanying Writ in the manner prescribed by law and within TEN DAYS, exclusive of the day of service, after service of this summons upon you if served within the County of Maricopa, or within TWENTY DAYS, exclusive of the day of service, if served outside the County of Maricopa, and you are hereby notified that in case you fail to so answer, judgment by default may be rendered against you for the full

amount of the balance due upon the judgment against the defendant and in favor of plaintiff and not merely for the amount that you may owe to the defendant, and that such judgment may be so rendered in addition to any other matters which may be adjudged against you as prescribed by law.

The writ and summons contained no information with respect to how the garnishee was to "answer" or where and when the garnishee was to "appear." This may have contributed to Bates' failure to appreciate the significance of the documents and his resulting neglect in failing to answer the writ.[3]

An additional factor that could have been considered by the trial court was Bates' physical and mental condition in November of 1975. At that time, Bates was recovering from an industrial accident and suffering from depression. This condition, added to the confusing nature of the proceedings and notice, could well have contributed to his failure to understand and answer the writ.

■ The reasons behind Bates' failure to understand and answer relate to the question of excusable neglect. The court of appeals held that excusable neglect alone could not be sufficient grounds to set aside

the default under clause 6. We agree. Excusable neglect is listed in clause 1 and therefore must be raised within six months of the judgment. While it is not sufficient grounds alone to authorize relief three and one-half years after judgment, excusable neglect may certainly be an equitable consideration to be weighed with other factors to determine if there are extraordinary circumstances present which justify relief. *See Roll v. Janca, supra; Klapprott v. United States, supra.*

The last consideration is the fact that Bates did not receive notice that judgment had been entered against him for the full amount of the Webb/Erickson judgment until some time in March of 1979. Rule 77(g) of the Arizona Rules of Civil Procedure provides that the clerk "shall serve notice of the entry [of judgment] by mail . . . upon *every party* affected thereby who is *not in default for failure to appear . . . .*" (Emphasis supplied.) Since no notice of the entry of judgment is required to be given in the case of default, and since Webb chose not to execute on the judgment until three and one-half years later, Bates was effectively deprived of an opportunity to set the judgment aside under clause 1 of Rule 60(c).

■ Lack of notice does not toll the six-month limitation, *Leahy, supra,* and

**3.** The legislature recognized the confusion produced by such notice, and in 1981 amended the statutes accordingly. Section 12–1574(C) was added and reads:

The plaintiff seeking the writ of garnishment shall serve on the garnishee, together with the summons and writ of garnishment, the form and instructions provided by the clerk of the court or justice of the peace pursuant to § 12–1579.

Section 12–1579(B) reads:

The clerk of the court and justice of the peace shall prepare and furnish without charge answer forms and instructions for completing the forms. The form shall provide information necessary to answer the writ as specified in § 12–1574.

The legislature also took notice of the inherent risk of unfairness to garnishee defendants and

amended § 12–1583. Judgments by default are no longer permitted against garnishees except after further notice and a specific order to the garnishee to appear before the court. Section 12–1583 reads, in pertinent part:

If a garnishee fails to answer within the time specified in the writ, the party for whom the writ has been issued may petition the court for the issuance of an order requiring the garnishee to appear before the court at a time and place specified in the order to *answer the writ. In the event that the garnishee fails to appear after the service of the order requiring the appearance in person upon the garnishee, the court may, after judgment has been rendered against the defendant, render judgment by default against the garnishee for the full amount of the judgment against the defendant.*

alone is not sufficient grounds to justify relief under clause 6, *In re Morrow,* 502 F.2d 520 (5th Cir.1974). We have previously held, however, that the lack of notice of the default judgment may be considered in the application of clause 6. In *Union Oil Co. of California v. Hudson Oil Co.,* 131 Ariz. 285, 640 P.2d 847 (1982), the insurer did not receive the summons and complaint forwarded to it by its insured. As a result, the insurer did not have notice of the lawsuit or the subsequent default judgment until seven months after the default judgment had been entered. In this situation, we held that the trial court properly considered the lack of notice of the judgment in granting relief under clause 6. *Id.* at 288–89, 640 P.2d 850–51. Under the circumstances of the present case, lack of notice of the default judgment can be considered among other equities in the application of clause 6.[4] *Roll v. Janca, supra.*

None of the circumstances of this case alone would have been sufficient to invoke the equitable relief of clause 6. In combination, however, a unique situation was created and we cannot say that the trial court abused its discretion in vacating the default. *See Roll v. Janca, supra.*

### PROMPT ACTION

■ The judgment by default against Bates was entered on February 26, 1976. According to the record below, Webb's attorney contacted Bates in late March of 1979, informing him of the judgment and suggesting that they reach some type of settlement. Bates immediately contacted an attorney. The parties communicated several times during the next few months, but a settlement was never reached. On August 7, Webb garnished Bates' wages

and on August 16, Bates moved to vacate the default judgment. On these facts, the trial court did not abuse its discretion in presumptively finding that Bates acted promptly to set the default aside. Bates was not even aware of the judgment until March of 1979. After that time, negotiations were in progress to reach a settlement. When his wages were actually garnished and it became clear that no settlement could be reached, Bates promptly and appropriately sought relief from the default. *Cf. United Imports & Exports v. Superior Court,* 133 Ariz. 43, 653 P.2d 691 (1982) (motion to set aside default judgment was not prompt where motion was not made until after judgment had been subject to several execution proceedings).

### MERITORIOUS DEFENSE

■ In his affidavit, Bates stated that while Carl Erickson was the real estate agent handling the sale of his house, in November of 1975 the entire transaction was in escrow at Minnesota Title Company. Bates claimed that he had no control over the payment of the real estate commission and never owed Erickson any money. It is difficult to tell what Bates meant when he claimed he had "no control" over the payment of the commission. Interpreting this phrase in its broadest sense, however, it could mean that the commission was being paid by someone else or had already been paid.

With respect to the requirement of a meritorious defense, we have recognized that the affidavit asserting such a defense "is not intended to be a substitute for a trial of the facts. It is enough if there is shown from all the material facts set forth in the affidavit . . . that there is a substantial defense to the action." *Union Oil of*

---

4. The record does not reveal the reason for Webb's delay in executing upon the judgment against Bates. Good reasons may exist. It is possible, also, that counsel for a judgment creditor may intentionally delay execution on a default judgment for six months in order to deprive an unwitting, default judgment debtor from asserting the grounds specified in parts (1), (2) or (3) of Rule 60(c) in an attempt to set aside the judgment. We disapprove of such a practice.

*California v. Hudson Oil Co.,* 131 Ariz. at 289, 640 P.2d at 851. These facts, if proved at trial, would constitute a meritorious defense.

In conclusion, we find that there was sufficient evidence before the trial court from which it could have exercised its discretion to provide Bates relief under clause 6 of Rule 60(c), that Bates had sought relief promptly and had shown a meritorious defense.

Accordingly, the opinion of the court of appeals is vacated, and the judgment of the trial court is affirmed.

HOLOHAN, C.J., GORDON, V.C.J., and HAYS and CAMERON, JJ., concur.