NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

PABLO GONZALEZ, et al., *Plaintiffs/Appellants*,

*v.*

QUOC NGUYEN, et al., *Defendants/Appellees*.

No. 1 CA-CV 16-0141
FILED 3-21-2017

Appeal from the Superior Court in Maricopa County
No. CV 2014-052846
The Honorable Brian S. Rees, Judge *Pro Tempore*

**REVERSED AND REMANDED**

COUNSEL

Gregg Clarke Gibbons PC, Scottsdale
By Gregg Clarke Gibbons
*Co-Counsel for Plaintiffs/Appellants*

Lewis Roca Rothgerber Christie LLP, Phoenix
By Susan M. Freeman, Justin J. Henderson
*Co-Counsel for Plaintiffs/Appellants*

Jones, Skelton & Hochuli PLC, Phoenix
By William G. Caravetta, III, Kevin K. Broerman, Justin M. Ackerman
*Counsel for Defendants/Appellees*

## MEMORANDUM DECISION

Judge Margaret H. Downie delivered the decision of the Court, in which Presiding Judge Diane M. Johnsen and Judge James P. Beene joined.

D O W N I E, Judge:

¶1        Pablo and Randi Gonzalez (collectively, "Plaintiffs")[1] appeal from an order setting aside a default judgment against Quoc Nguyen and Dysart Hotel L.L.C. dba Quality Inn — Goodyear ("Dysart Hotel") (collectively, "Defendants"). For the following reasons, we reverse and remand with instructions to reinstate the default judgment in favor of Plaintiffs.

## FACTS AND PROCEDURAL HISTORY

¶2        Nguyen was driving a vehicle owned by his then-employer, Dysart Hotel, when he rear-ended Gonzalez's truck on April 9, 2012. Dysart Hotel advised its insurance carrier — Companion Commercial Insurance Company ("Companion") — of the claim through Companion's designated claims administrator, Precision Risk Management ("Precision"). Precision in turn retained independent adjuster Carl Warren & Company ("Carl Warren") to assist with the Gonzalezes' claim.

¶3        In May 2012, Carl Warren claims analyst Bill Sim advised Plaintiffs' counsel that "any future communications concerning Mr. Gonzalez" should be directed to him. In September 2012, Plaintiffs' counsel sent Sim "medical bills, medical records, and reports and other documents" regarding the Gonzalezes' claim.

¶4        Plaintiffs filed a negligence complaint against Defendants on April 4, 2014.  On August 12, 2014, Plaintiffs' counsel sent Sim a detailed demand letter, as well as a copy of the complaint.  The demand letter asserted damages of $716,242.50, including $600,000 for pain and suffering, and offered to settle for $695,000.  After receiving no response, Plaintiffs' counsel learned on October 14, 2014 that Sim had sent the file to Gabriela Diaz at Precision due to the size of the demand.  Diaz advised

---

[1]        References to "Gonzalez" in the singular are to Pablo Gonzalez.

Plaintiffs' counsel that Sim would call him by November 7, 2014. The Gonzalezes' lawyer thereafter left voice-mail messages for Diaz on December 10, 11, and 15, but received no response.

¶5          Dysart Hotel was served on December 18, 2014, but it did not respond to the complaint. On February 13, 2015, Plaintiffs' counsel left a voice-mail message for Diaz, stating that he was preparing to default Defendants. He asked Diaz to call him immediately, but she did not respond. Plaintiffs applied for entry of default against Dysart Hotel on February 20, 2015, serving that filing on Dysart Hotel's LLC member and statutory agent, Sim, and Diaz.

¶6          On February 25, 2015, Plaintiffs' attorney left Diaz a voice-mail message advising that Dysart Hotel's time to answer was running. Diaz responded that they wished to "resolve the case and will 'answer accordingly.'" On February 27, 2015, Plaintiffs' counsel advised Diaz: "Please be aware that the Defendant has ten (10) judicial days by which to file its Answer or the Default will become final," and asked, "Does your insured intend to file an answer? Please advise." Diaz did not respond.

¶7          On April 20, 2015, Plaintiffs applied for entry of default and served that filing on Dysart Hotel's LLC member and statutory agent, on Sim, and on Diaz. On June 2, 2015, Plaintiffs moved for a default judgment against Dysart Hotel and Nguyen in an amount to be determined at a hearing.[2] Plaintiffs served that filing on Dysart Hotel through its LLC member and statutory agent and also served Diaz and Sim. The same individuals were also served with notice of the June 23, 2015 default judgment hearing.

¶8          No one appeared for Defendants at the default hearing. Gonzalez testified about his loss of earnings, ongoing and permanent problems with his right arm and neck, and continuing pain. The court questioned Gonzalez and his attorney about damages and causation, directed counsel to submit "a packet of damages," and took the matter under advisement. Plaintiffs thereafter submitted extensive medical records, bills and damage calculations to the court, sending copies of the documents to Dysart Hotel, Sim, and Diaz.

¶9          The court issued a default judgment against Defendants in the sum of $667,279.56 on July 15, 2015.

---

[2]     Nguyen had been served by publication.

3

**¶10** On August 11, 2015, Defendants moved to vacate the default judgment under Arizona Rule of Civil Procedure 60(c).[3] After briefing and oral argument, the court granted Defendants' motion and vacated the default judgment. Plaintiffs filed a timely notice of appeal. We have jurisdiction pursuant to Arizona Revised Statutes ("A.R.S.") section 12-2101(A)(2).

## DISCUSSION

**¶11** Whether to set aside a default judgment is a decision entrusted to the superior court's discretion, and we will affirm its ruling absent a clear abuse of discretion. *Richas v. Superior Court*, 133 Ariz. 512, 514 (1982); *Gen. Elec. Capital Corp. v. Osterkamp*, 172 Ariz. 191, 193 (App. 1992). The court's exercise of discretion, though, must be supported "by facts or sound legal policy." *City of Phoenix v. Geyler*, 144 Ariz. 323, 328–29 (1985). A court abuses its discretion if no evidence supports its conclusion or the reasons given are clearly untenable, legally incorrect, or amount to a denial of justice. *Searchtoppers.com, L.L.C. v. TrustCash LLC*, 231 Ariz. 236, 241, ¶ 20 (App. 2012).

**¶12** When a party against whom a complaint has been filed fails to respond as provided in the Arizona Rules of Civil Procedure, the plaintiff may apply for entry of default. Ariz. R. Civ. P. 55(a). The default becomes effective ten days after the filing of the application for entry of default, unless the party alleged to be in default "pleads or otherwise defends" within those ten days. Ariz. R. Civ. P. 55(a)(2)–(4). The court may enter default judgment on motion of the plaintiff or after a hearing. Ariz. R. Civ. P. 55(b). A court may set aside a final default judgment under Rule 60(c) "[f]or good cause shown." Ariz. R. Civ. P. 55(c); *see also Webb v. Erickson*, 134 Ariz. 182, 185–86 (1982) (good cause standard applies to setting aside entry of default and to setting aside a default judgment).

**¶13** Defendants' motion to vacate cited Rule 60(c) without specifying any subparagraph of the rule. Plaintiffs' response focused on Rule 60(c)(1), arguing Defendants had proffered "insufficient facts upon which the Court could predicate even a discretionary finding that the failure to answer was due to 'excusable neglect'" and analyzing factors relevant to a Rule 60(c)(1) determination. In their reply, Defendants made

---

[3] Rule 60 was revised effective January 1, 2017. Prior Rule 60(c) is now Rule 60(b). We cite the rules in effect at the time of the superior court's ruling.

no mention of Rule 60 and conceded "any reasonable person would have not acted in the manner resulting in the default." At oral argument in the superior court, Defendants stated at one point that they were relying on Rule 60(c)(6), but later argued that "in accordance with 60(c)(1), inexcusable inadvertence, neglect and any other reason justifying relief," the default judgment should be set aside. On appeal, Defendants rely solely on Rule 60(c)(6), so we confine our review to that provision.

¶14        A trial court may vacate a default judgment "when, but only when, the moving party has made an adequate showing of each of the following elements: (1) that it acted promptly in seeking relief from the default judgment, (2) that its failure to file a timely answer was excusable under one of the six subdivisions of Rule 60(c) . . . and (3) that it had a meritorious defense." *United Imps. & Exps., Inc. v. Superior Court,* 134 Ariz. 43, 45 (1982). Although the law "favors resolution on the merits" and vests "broad discretion" in the trial court, its discretion to set aside a default judgment "is a legal, and not an arbitrary or personal discretion. There must be some legal justification for the exercise of the power, some substantial evidence to support it." *Id.*; *see also Richas*, 133 Ariz. at 514 ("[A] proper showing of facts is 'a prerequisite to the exercise' of the discretion given the trial court.").

¶15        The Gonzalezes first contend Defendants did not act promptly in seeking relief. The record, though, supports Defendants' contention that Plaintiffs not only failed to make this argument in the superior court, they conceded the timeliness of the motion to vacate. We therefore decline to address Plaintiffs' contrary argument urged for the first time on appeal. *See In re MH 2008-002659*, 224 Ariz. 25, 27, ¶ 9 (App. 2010) ("We do not consider arguments raised for the first time on appeal except under exceptional circumstances.").

¶16        Defendants assert that "[t]he default judgment came as a complete surprise to Companion." But it is undisputed that Companion learned of Plaintiffs' claim shortly after the accident and that its designated agents — Precision and Carl Warren — received notice of all relevant proceedings. *See Mayhew v. McDougall*, 16 Ariz. App. 125, 129 (1971) (Notice to independent adjuster acting for insurance company "was equivalent to notice to the Balboa Insurance Company itself."). This is not a situation where an insured failed to advise its insurer of an action and the insurer "through no fault of its own . . . has not had the opportunity of defending a suit on the merits." *Camacho v. Gardner*, 104 Ariz. 555, 560 (1969).

¶17 In granting the motion to vacate, the superior court did not mention the meritorious defense requirement. "To set aside a default without substantial evidence as to each of the prongs amounts to an abuse of discretion." *Sax v. Superior Court*, 147 Ariz. 518, 521 (App. 1985); *see also Hilgeman v. Am. Mortg. Sec.*, 196 Ariz. 215, 221 (App. 2000) (Assertion that default judgment was excessive was a "defense to the amount of damages awarded by the trial court."). The record does not suggest a meritorious defense. "A showing of a meritorious defense requires a showing by affidavit, deposition or testimony of some facts which, if proved at trial, would constitute a defense." *United Imps.*, 134 Ariz. at 46; *see also Richas*, 133 Ariz. at 517 ("A meritorious defense must be established by facts and cannot be established through conclusions, assumptions or affidavits based on other than personal knowledge."). An affidavit in support of a motion to set aside "is sufficient if the facts set forth therein, taken as true, show a substantial defense to the action." *Almarez v. Superior Court*, 146 Ariz. 189, 192 (App. 1985).

¶18 Defendants' motion to vacate appended an affidavit from Precision claims manager Ignacio Nunez. Nunez avowed that Diaz "was responsible for the day-to-day coordination of the adjustment of the claim" and that "[t]he claims materials reveal an oversight or administrative error in addressing Mr. Gonzalez's Application for Default Judgment." Nunez further opined that "[v]acating the judgment and allowing the case to be litigated will push the case to settlement." Nunez said nothing about potential defenses.

¶19 At oral argument on the motion to vacate, Defendants implicitly conceded they lacked a non-speculative defense to the damages award, stating: "At the end of . . . discovery, we may be dead wrong. $660,000 may be reasonable. It may be reasonable given what we find in the medical records. We don't have complete medical records." Counsel later stated: "We're just going forward on damages to see if, in fact, there is a substantiation for $660,000 of damages in this case." Yet at that point, more than three years had elapsed since the accident, Defendants' agents had been in possession of Gonzalez's medical records and lost earnings calculations since at least July 2015, and nothing suggests that, through the exercise of minimal diligence, they could not have obtained any additional information deemed necessary to evaluate Plaintiffs' August 2014 assertion of damages totaling $716,242.50.

¶20 Although "the showing of a meritorious defense need not be strong . . . it must be greater than mere speculation." *Richas*, 133 Ariz. at 517. The "conclusion of a lawyer or client, sworn or unsworn, that 'a

defense exists' is evidence of nothing; it is a conclusion which carries no weight and is insufficient to establish the element of meritorious defense." *United Imps.*, 134 Ariz. at 46; *see also U-Totem Store v. Walker,* 142 Ariz. 549, 553 (App. 1984) ("A meritorious defense must be established by facts and not through conclusions, assumptions or affidavits based on other than personal knowledge."); *Hawke v. Bell*, 136 Ariz. 18, 20 (App. 1983) (superior court abused its discretion by setting aside a default judgment as to damages when "no further evidence pertaining to the amount of damages was presented").

**¶21**    Not only did Defendants fail to articulate a non-speculative defense, but the Gonzalezes' evidence was substantial. *See Camacho v. Gardner,* 6 Ariz. App. 590, 596 (1967) ("[W]hen proof of damage after a default in an unliquidated damage case is as scanty as that presented to the court here, an order setting aside a default judgment, but not the default itself, is justified.") *modified on rehearing*, 7 Ariz. App. 483 (1968), *vacated*, 104 Ariz. 555 (1969). The superior court heard testimony and avowals at the default judgment hearing and received post-hearing documentation that included a narrative report by Gonzalez's surgeon, Stuart Kozinn, M.D. opining about causation and permanent impairment, along with billing statements; medical records and bills of Paradise Valley Pain Specialists/Dr. Paul Wang; medical records and bills of Spooner Physical Therapy; medical records and bills of Stand-Up MRI; bills from Scottsdale Healthcare; co-pay documentation; prescription documentation; lost earnings calculations for Maricopa County Sheriff's Office; and lost earnings calculations for Salt River Tubing & Recreation.

**¶22**    In granting the motion to vacate, the superior court stated:

> [T]he Court is presented with a dilemma. The Court seeks justice — a fair result. As much as the Court would like to think that its decision to grant the default in the full amount requested, the Court admits that it has, as it had then, doubts about the fairness of the amount of the judgment. Absent scrutiny, it seemed fair. Given greater scrutiny, it seems unjustly large. At the same time, it is supported by significant bills, a permanent injury claim and significant lost earnings. Nonetheless, it seems too large. On the other hand, it is "unfair" for the insurance company to have handled the claim in such a casual or indifferent manner as to "let the chips fall where they may" and then plead the injustice after the fact. So, the issue is whether the penalty for their mistake is to force acceptance of the award or to

7

allow the matter to proceed to a jury trial on damages. The default in such a "tie" is to allow the case to be decided on the merits. The Plaintiff gets the same result he would have received had the Defendants timely answered. There is no prejudice to the Plaintiff; he loses nothing except the added time to reach ultimate justice.

Although the desire to achieve "a fair result" is laudable, the court did not find (nor did the Defendants present) a necessary predicate for setting aside the judgment — the existence of a meritorious defense. Furthermore, it is the nature of default judgments that the court receives one-sided, potentially incomplete information when setting damages. Most defaulted defendants could assert that, had they been present to contest the plaintiff's evidence, the award would have been less. But respect for the finality of judgments can give way only "in extraordinary circumstances." *Webb*, 134 Ariz. at 186; *see also Panzino v. City of Phoenix*, 196 Ariz. 442, 448, ¶ 19 (2000) ("Although our trial courts enjoy broad discretion when deciding whether to set aside judgments under Rule 60(c), that discretion 'is circumscribed by public policy favoring finality of judgments and termination of litigation.'" (citation omitted)). Except for the extraordinarily inept handling of the claim by Precision and Carl Warren, no extraordinary circumstances are apparent in this record.

¶23 The superior court's express finding that there was no excusable neglect — a determination Defendants do not challenge — also cuts against granting relief to Defendants. *See Hilgeman*, 196 Ariz. at 221 ("Although excusable neglect is not a prerequisite for obtaining relief from a judgment under Rule 60(c)(6), a court may consider that factor in determining whether to grant such relief under that rule."); *see also Panzino*, 196 Ariz. at 446, ¶ 11 ("We cannot consistently hold that although Rule 60(c)(1) allows relief for judgment only for excusable neglect, Rule 60(c)(6) allows relief from inexcusable neglect.").

¶24 Finally, Defendants' "bait and switch[]" argument is unavailing. Defendants knew more than six months before the default proceedings that Plaintiffs were asserting damages in excess of $700,000. Plaintiffs' counsel explained that the complaint's prayer for "an amount no less than $75,000.00" was penned before all medical bills were received and served simply as a placeholder amount to establish that the case was not subject to compulsory arbitration. The superior court noted that it was "clear that when the complaint was filed that number was meaningless because [Plaintiffs] were already in the throes of making a

demand for ten times that much" and later observed that "it would be ludicrous to make a $75,000 demand on $68,000 in [medical] bills."

**CONCLUSION**

**¶25** For the foregoing reasons, we reverse the judgment of the superior court and remand with instructions to reinstate the default judgment and to conduct any proceedings necessary to address the issue of interest on the default judgment. We award the Gonzalezes their taxable costs on appeal contingent on compliance with Arizona Rule of Civil Appellate Procedure 21. We grant that portion of Defendants' motion to strike that relates to references in the reply brief to the Unfair Claim Settlement Practices Act. We deny the remainder of that motion.



AMY M. WOOD • Clerk of the Court
FILED: AA