NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS

### DIVISION ONE

In re the Marriage of:

KRISTIN MICHELE EVANS, *Petitioner/Appellant*,

*v.*

JUSTIN NICHOLAS EVANS, *Respondent/Appellee*.

No. 1 CA-CV 24-0277 FC

FILED 11-05-2024

Appeal from the Superior Court in Maricopa County
No. FC 2022-095536
The Honorable Lisa Stelly Wahlin, Judge

**AFFIRMED**

COUNSEL

State 48 Law Firm, Scottsdale
By Robert Hendricks, Stephen Vincent, Samantha Brown
*Counsel for Petitioner/Appellant*

Justin Nicholas Evans, Queen Creek
*Respondent/Appellee*

---

**MEMORANDUM DECISION**

Judge Andrew M. Jacobs delivered the decision of the Court, in which Presiding Judge Maria Elena Cruz and Judge Samuel A. Thumma joined.

---

**J A C O B S**, Judge:

**¶1** Appellant Kristin Evans ("Mother") appeals the superior court's grant of Appellee Justin Evans' ("Father") motion to set aside a default decree of dissolution of marriage. Because Mother has not shown that the court abused its discretion in granting Father's motion, we affirm.

## FACTS AND PROCEDURAL HISTORY

### A. After Three Years of Marriage, Mother and Father Separate.

**¶2** Mother and Father were married in 2019 and had four children during their marriage. In November 2022, Mother and Father separated. On November 12 that year, Mother obtained an Order of Protection against Father, which she voluntarily dismissed on December 2. Mother obtained a second Order of Protection against Father on December 8, which the superior court dismissed on December 19. The parties then began exercising equal parenting time with the children.

**¶3** Meanwhile, Mother filed a Petition for Dissolution of Non-Covenant Marriage in the superior court. Mother alleged Father was coercive and controlling and had committed "significant acts of domestic violence" against her. Mother served Father with the Petition on December 19, 2022.

**¶4** Father failed to answer the Petition by January 20, 2023. That day, Mother filed an Application and Affidavit for Entry of Default. Mother later acknowledged she had not yet served a Notice of Rights about Health Insurance on Father. On March 7, 2023, after serving a Notice of Rights about Health Insurance on Father, Mother filed a renewed Application and Affidavit for Entry of Default.

**B.** **The Superior Court Holds a Default Hearing and Grants Mother's Application for Entry of Default Judgment.**

¶5 On April 25, 2023, the court held a hearing on Mother's default application. Father did not attend. Mother testified Father was unable to parent, claiming he was prone to violence and anger. Later in the hearing, the court inquired about the previous orders of protection, asking Mother's counsel whether "there had been [an order of protection] at one point[,]" to which counsel replied that "there had been." On that same day, the court entered a Default Decree of Dissolution of Non-Covenant Marriage. The Default Decree recited "that significant domestic violence has occurred during the marriage, however, no current protective orders are in effect." The Default Decree awarded sole legal decision-making authority to Mother, the primary residential parent, with Father receiving supervised parenting time. The court ordered Father to pay $7,000 monthly in spousal support for ten years and $6,279 monthly for child support. As to other financial obligations, the court ordered Father to pay $25,116 in past child support, which was calculated assuming Father exercised no parenting time from approximately December 2022 to April 2023.

**C.** **Father Appeals the Default Decree and Retains Counsel.**

¶6 Mother's counsel mailed the Default Decree and other supporting documents to Father on May 1, 2023. Father filed a Notice of Appeal on May 30, 2023. Mother filed a Petition for Order to Appear Re Enforcement of Child Support and Spousal Maintenance and Contempt for Non-Compliance on July 21, 2023. The court also ordered the parties to attend a resolution management conference. On August 22, 2023, Father retained counsel. This court dismissed Father's appeal on August 24, 2023 as procedurally improper. Around this time, both parties filed statements for the resolution management conference. Moreover, both parties attended a hearing, where they stipulated to continuing the conference to a later date.

**D.** **The Superior Court Grants Father's Motion for Relief from the Default Decree.**

¶7 In October 2023, Father filed a Motion for Relief from Decree of Dissolution and Request to Set Aside. Father sought relief under Arizona Rule of Family Law Procedure 85(b)(3), claiming that Mother "fraudulently misrepresented and concealed material facts necessary for the [c]ourt's determination regarding parenting time, legal decision making, child support, and spousal maintenance." Father also sought relief under Family

Rule 85(b)(6), contending that the Default Decree "resulted in harsh terms that inflict hardship and injustice on Father and the children."

¶8 In February 2024, the superior court set aside the Default Decree as obtained through "misleading testimony and/or misrepresented . . . facts at the default hearing[.]" The court noted that during the default hearing, the commissioner inquired as to the previous protective order, recognizing that there was not a current protective order in place. The court acknowledged that Mother's counsel told the commissioner "there had been" a protective order. But the court found that statement misleading because Mother "did not clarify that the protective order was in place for only 11 days."

¶9 The superior court likewise found Mother's statements relating to the financial standing of the family misleading. Mother initially claimed in her Application and Affidavit for Entry of Default that Father earned $25,000 per month. In Father's Motion for Relief, however, he provided documentation showing his average annual income from 2019, 2020, and 2021 was $161,000. The court concluded that Mother misrepresented Father's earnings. Citing Family Rule 85(b)(6), a catch-all provision that encompasses serious injustice as a ground for setting aside a judgment, the court noted that Mother was awarded ten years of spousal maintenance, even though the parties' marriage lasted less than four years. The court granted Father's motion and set aside the Default Decree as it concerned spousal maintenance, legal decision-making, parenting time, child support, and past child support.

¶10 After the superior court denied Mother's motion to reconsider setting aside the Default Decree, Mother timely appealed. We have jurisdiction under Article 6, Section 9 of the Arizona Constitution, and A.R.S. § 12-2101(A)(1).

**DISCUSSION**

¶11 Mother argues the superior court abused its discretion in setting aside the Default Decree under Family Rules 85(b)(3) and 85(b)(6). Family Rule 44(b) provides that a "court may set aside a default for good cause, and it may set aside a final judgment under Rules 83 or 85" of the Family Rules. Ariz. R. Fam. Law P. 44(b). Looking for guidance to the Civil Rules, which use similar language, this "good cause" standard applies to entries of default and default judgments. *See Webb v. Erickson*, 134 Ariz. 182, 185-86 (1982); *DeHoney v. Hernandez*, 122 Ariz. 367, 371 (1979). We review decisions on motions to vacate default judgments for an abuse of discretion.

*See Richas v. Superior Court*, 133 Ariz. 512, 514 (1982).  Doing so, we defer to the superior court's factual findings absent an abuse of discretion.  *See Gutierrez v. Gutierrez*, 193 Ariz. 343, 347 ¶ 13 (App. 1998).

**¶12**　　　　Father filed no answering brief.  While the "failure to file an answering brief is equivalent to a confession of error by appellee," *Navarro v. State*, 32 Ariz. 119, 120 (1927), this rule may yield in cases involving the best interests of children.  *Hays v. Gama*, 205 Ariz. 99, 102-03 ¶ 18 (2003) (citing *Hoffman v. Hoffman*, 4 Ariz. App. 83, 85 (1966)).  Because the Default Decree contains terms concerning the children and their financial support, we decline to find a confession of error here.  Reaching the merits of this appeal, we conclude the superior court erred in setting aside the Default Decree under Family Rule 85(b)(3), but acted within its discretion by setting it aside under Family Rule 85(b)(6).

**The Superior Court Did Not Abuse Its Discretion by Setting Aside the Default Decree Under Family Rule 85(b)(6).**

**¶13**　　　　For a court to set aside a default judgment under Civil Rule 60(b) (or, thus, its analog, Family Rule 85(b)), a movant must show: (1) they "acted promptly in seeking relief from the entry of default;" (2) they had a meritorious defense; and (3) that one of the six grounds under Rule 85(b) is present.  *See Daou v. Harris*, 139 Ariz. 353, 358-59 (1984); *Webb*, 134 Ariz. at 186.  As we review the superior court's decision to set aside a default judgment under this standard, we "review[] the record to determine whether there was sufficient evidence before the [superior court] from which it could have exercised its discretion" to find these three things.  *Richas*, 133 Ariz. at 514.  Because there was sufficient evidence, the court did not abuse its discretion in setting aside the Default Decree.

**A.　　Father Moved to Set Aside the Default Decree Promptly.**

**¶14**　　　　A motion brought pursuant to Rule 85(b) must be brought within an objectively reasonable time.  *See Brooks v. Consol. Freightways Corp. of Del.*, 173 Ariz. 66, 71 (App. 1992).  The superior court retains discretion to determine whether the delay in bringing the motion was reasonable.  *Id.*  Motions to set aside judgments under Family Rule 85(b)(1)-(3) must be filed within six months of the entry of the judgment.  Ariz. R. Fam. Law P. 85(c)(1).  But there is no outer limit as to what is reasonably prompt under Family Rule 85(b)(6), and determining what is a "reasonable time" using the Civil Rules as a guide is thus a fact-specific determination.  *See Webb*, 134 Ariz. at 186-87.

¶15        Here, the court did not abuse its discretion by implicitly concluding that Father acted within a reasonable time by moving to set the Default Decree aside six months after its entry.  Father became involved in the case after the superior court entered the Default Decree.  He filed a Notice of Appeal thirty days after receiving the Default Decree.  While awaiting the result of his appeal, he attempted to defend himself against Mother's Motion for Non-Compliance, and ultimately hired counsel to aid in that defense.  He filed a statement in advance of a court-ordered resolution management conference.  Two months after we dismissed Father's appeal on August 24, 2023, Father filed his Motion for Relief from Decree of Dissolution in October 2023.  Father's continuing participation in this matter, though imperfect, reflected concern about the Default Decree and a sustained effort to oppose it.  His filing under Family Rule 85(b)(6) respected rule-based deadlines, because it simultaneously relied on Family Rule 85(b)(3), and was filed on the last day of the six-month period under that rule to move to set aside the Default Decree.  On these facts, the court did not abuse its discretion by finding Father acted reasonably promptly.

### B.    The Superior Court Appropriately Concluded that Father Had a Meritorious Defense.

¶16        Father also had to show he had a meritorious defense to the action.  *Daou*, 139 Ariz. at 358-59.  The burden to establish a meritorious defense "is 'minimal,' requiring only 'some legal justification for the exercise of the power, some substantial evidence to support it[.]'" *Gonzalez v. Nguyen*, 243 Ariz. 531, 534 (2018) (cleaned up).  "[T]he showing of a meritorious defense need not be strong . . . [but] it must be greater than mere speculation." *Richas*, 133 Ariz. at 517.

¶17        Father met his burden here.  He presented tax returns showing his income was far less that what Mother represented.  As a defense to Mother's requests for child support premised on being the sole caregiver of the children from December 19, 2022 to April 25, 2023, Father claimed he exercised equal parenting time with Mother during that period.  As a defense to Mother's charge that Father was incapable of parenting the children, Father argued that during this time, both parents were communicating effectively about "the children's health, exchange times, and other related matters."  The superior court did not abuse its discretion by implicitly finding Father had meritorious defenses.

## C.     The Superior Court Did Not Err in Granting Relief Under Family Rule 85(b)(6).

¶18        We look to Civil Rule 60(b)(6) in construing Family Rule 85(b)(6). *See* Ariz. R. Fam. Law P. 1(c). Courts have the power "to vacate judgments whenever such action is appropriate to accomplish justice." *Webb*, 134 Ariz. at 186 (quoting *Klapprott v. United States*, 335 U.S. 601, 615 (1949)). One injustice that can justify setting aside a judgment is if the judgment is excessive. *Gonzalez*, 243 Ariz. at 535 ¶ 16; *see also Roll v. Janca*, 22 Ariz. App. 335, 338 (1974). We "carefully scrutinize[]" large damage awards a movant seeks to set aside. *Daou*, 139 Ariz. at 361.

¶19        The record contains sufficient evidence that the Default Decree is so onerous on Father as to be an injustice under Rule 85(b)(6) the court could, within its discretion, set aside. Father's Motion for Relief showed Father's average annual income from 2019, 2020, and 2021 was $161,000, a figure the superior court apparently accepted, "which is significantly less than the $300,000 yearly income that Mother testified that Father earns." The monthly payment of $13,279 in the Default Decree would consume $159,348 per year, leaving Father $1,652 to live on, if he continued to earn $161,000. Mother contends she recalled Father making more money, but it is not our task to reweigh the facts. *See Gutierrez*, 193 Ariz. at 347 ¶ 13. Additionally, the Default Decree imposes these burdensome terms on Father for ten years, without evidence that Mother could not become self-sufficient sooner. *See* A.R.S. § 25-319(B) ("The court may award spousal maintenance pursuant to the guidelines only for a period of time and in an amount necessary to enable the receiving spouse to become self-sufficient.").

¶20        Mother asks this court to impose a requirement that Father prove excusable neglect to obtain relief under Family Rule 85(b). Mother's argument fails because a movant under Family Rule 85(b) need only demonstrate the presence of any one of the six grounds for relief, and Family Rule 85(b)(6) does not require a showing of excusable neglect. *See Daou*, 139 Ariz. at 358-59. Because Father's Motion for Relief satisfies Family Rule 85(b)(6), the court did not abuse its discretion in providing that relief.

**CONCLUSION**

¶21        We affirm.



AMY M. WOOD • Clerk of the Court
FILED:    AGFV