NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

RICHARD ANDERSON, *Plaintiff/Appellee,*

*v.*

TAMEKA SHANAE WINSTON, *Defendant/Appellant.*

No. 1 CA-CV 25-0239

FILED 12-23-2025

Appeal from the Superior Court in Maricopa County
No. CV2022-006824
The Honorable John L. Blanchard, Judge

**AFFIRMED**

COUNSEL

The Law Office of D. M. Godley Esq. P.L.L.C., Phoenix
By Davina M. Godley
*Counsel for Plaintiff/Appellee*

Tameka Shanae Winston, Avondale
*Defendant/Appellant*

**MEMORANDUM DECISION**

Judge Daniel J. Kiley delivered the decision of the Court, in which Presiding Judge Angela K. Paton and Judge Brian Y. Furuya joined.

**K I L E Y**, Judge:

**¶1**　　　　Tameka Winston appeals from the superior court's order denying her request for relief from a judgment obtained by Richard Anderson. Because Winston did not establish grounds for relief, we affirm.

## FACTS AND PROCEDURAL HISTORY

**¶2**　　　　We view the record in the light most favorable to upholding the superior court's refusal to set aside the judgment. *See Goglia v. Bodnar*, 156 Ariz. 12, 20 (App. 1987) (citation omitted).

**¶3**　　　　Winston and Anderson were in a romantic relationship during which Winston gave birth to two children, J.A. and C.A. In proceedings filed after the parties' relationship ended, the court determined, without objection, that Anderson was the father of both children. By stipulation of the parties, the court entered legal decision-making and parenting time orders, and ordered Anderson to pay Winston child support of $500 per month. After 2013, the parties went back to court several times to modify parenting time and child support, including, in 2015, to modify child support to $0.

**¶4**　　　　In 2020, Anderson used an at-home paternity test that showed he was not J.A.'s biological father. In June 2021, the court, by stipulation of the parties, set aside the judgment of paternity as to J.A.

**¶5**　　　　In May 2022, Anderson sued Winston for paternity fraud, alleging that he provided monetary and emotional support for J.A. in reliance on her misrepresentation that he was the child's father. In her unverified answer, Winston neither admitted nor denied Anderson's paternity of J.A., but denied making any misrepresentations on that issue.

**¶6**　　　　Anderson then filed a motion for summary judgment, which he supported with evidence that included copies of filings in the family court case, a copy of the DNA test results, and his own affidavit stating that he provided financial support to J.A. in reliance on Winston's false representation that he was J.A.'s father. Winston filed no response. Concluding that the undisputed evidence showed that Winston "fraudulently represented to [Anderson] that he was [J.A.'s] biological father[,]" the superior court granted summary judgment to Anderson on the issue of Winston's liability for paternity fraud. The court denied summary judgment on the issue of damages, however, noting that Anderson "did not provide any evidence (or a calculation) of his damages[.]"

¶7        Anderson then filed what he captioned as a "motion to alter or amend [the] judgment to include damages," which was, in effect, a second motion for summary judgment, this time on the issue of damages. Anderson supported his motion with a copy of an unverified disclosure statement listing total damages of $136,740, and itemizing the claimed damages in categories that included child support paid, clothing and gifts for J.A., and punitive damages.

¶8        Winston did not respond to Anderson's motion. Finding no genuine issue of material fact about Anderson's claimed damages, the court granted the motion and awarded Anderson damages of $136,740.

¶9        After the court's ruling but before final judgment was entered, Winston filed a motion for reconsideration disputing Anderson's claimed damages. Among other things, Winston denied that Anderson incurred the clothing and gift expenses that he claimed and noted that he provided no "invoices, transaction records, or any other evidence that would confirm the legitimacy of the alleged purchases[.]" In March 2024, the superior court denied Winston's motion for reconsideration and entered final judgment under Arizona Rule of Civil Procedure ("Rule") 54(c) (the "March 2024 Judgment"). Winston did not appeal from the March 2024 Judgment.

¶10        Six months later, in September 2024, Winston moved for relief from the March 2024 Judgment, challenging both the court's determination of her liability and its award of damages. In support of her challenge to the court's determination of liability, Winston asserted that because Anderson stipulated that he was J.A.'s biological father at the outset of the family court proceedings, principles of judicial estoppel barred him from later disputing paternity. According to Winston, Anderson made equivocal statements at a hearing in the family court case that suggested that he had a "strong suspicion" that "he was not J.A.'s father[.]" Anderson nonetheless agreed to the entry of a paternity judgment, she contends, and his decision to proceed "with his eyes wide open" barred him from later disputing the issue of paternity.

¶11        Winston further argued that she was entitled to relief from the award of damages under Rule 60(b)(3) and (6) of the Arizona Rules of Civil Procedure. According to Winston, Anderson's damages calculation was "undocumented" and failed to "[meet] the admissibility threshold for summary judgment motion practice." In January 2025, the court denied Winston's motion in an order entered under Rule 54(c) (the "January 2025 Judgment").

3

¶12        Winston timely appealed. We have jurisdiction under A.R.S. § 12-201(A)(1).

## DISCUSSION

¶13        Winston challenges the court's denial of her motion for relief from the March 2024 Judgment, asserting, first, that the court improperly failed to apply principles of judicial estoppel to bar Anderson from disputing his paternity of J.A.

¶14        The doctrine of judicial estoppel generally prohibits a litigant who has obtained judicial relief by asserting one position from asserting a contradictory position in subsequent proceedings involving the same parties. *See State v. Towery*, 186 Ariz. 168, 182 (1996). The party invoking judicial estoppel must show three requirements: "(1) the parties must be the same, (2) the question involved must be the same, and (3) the party asserting the inconsistent position must have been successful in the prior judicial proceeding." *In re Marriage of Thorn*, 235 Ariz. 216, 222, ¶ 27 (App. 2014) (citation modified). A court's application of judicial estoppel is reviewed for an abuse of discretion. *Wells Fargo Bank NA v. Terrenate Enters., Inc.*, No. 1 CA-CV 19-0081, 2020 WL 2730781 at *8, ¶ 42 (Ariz. App. May 26, 2020) (mem. decision).

¶15        Judicial estoppel does not apply unless a party has "prevailed" on a disputed issue. *See, e.g., New Hampshire v. Maine*, 532 U.S. 742, 749 (2001) (noting that judicial estoppel "generally prevents a party from prevailing in one phase of a case on an argument and then relying on a contradictory argument to prevail in another phase." (citation omitted)). Because success in a prior judicial proceeding is required for the application of judicial estoppel, judicial estoppel cannot be predicated on a favorable judgment that is later vacated or set aside. *See Coal Resources, Inc. v. Gulf & W. Indus., Inc.*, 865 F.2d 761, 773 (6th Cir. 1989) (declining to apply judicial estoppel against party that obtained favorable verdict at trial because "[i]ts verdict was reversed on appeal"). Here, the paternity judgment was vacated by stipulation of the parties. Judicial estoppel cannot, therefore, apply to either the vacated paternity judgment or to Anderson's statements at the time he consented to its entry. *Cf. Campbell v. SZL Props., Ltd.*, 204 Ariz. 221, 225, ¶ 20 (App. 2003) ("[A] vacated judgment cannot have any collateral estoppel effect."); *Bank of Am. Nat. Trust and Sav. Ass'n v. Maricopa Cnty.*, 196 Ariz. 173, 176, ¶ 9 (App. 1999) (party was not judicially estopped when action was voluntarily dismissed).

¶16            Winston next argues that the court erred in denying her relief from the judgment because it purportedly misinterpreted the requirements of Rule 60(b)(3) and (6).

¶17            Rule 60(b) governs a party's ability to seek relief from a judgment or order entered. Ariz. R. Civ. P. 60(b). The superior court has broad discretion in deciding whether to grant relief under Rule 60(b). *Gonzalez v. Nguyen*, 243 Ariz. 531, 534, ¶ 11 (2018). In exercising its discretion, however, a court must be mindful of the "compelling interest in the finality of judgments which should not be lightly disregarded." *City of Phoenix v. Geyler*, 144 Ariz. 323, 328 (1985) (citation modified); *see also In re Marriage of Zale*, 193 Ariz. 246, 249, ¶ 11 (1999) ("A judgment is a solemn record[,]" and "[i]t should not lightly be disturbed." (citation omitted)). We review a court's order granting or denying relief under Rule 60(b) for an abuse of discretion. *Aloia v. Gore*, 252 Ariz. 548, 551, ¶ 11 (App. 2022). The scope of our review of the denial of a Rule 60 motion "is restricted to the questions raised by the motion to set aside and does not extend to a review of whether the trial court was substantively correct in entering the judgment from which relief was sought." *Laveen Meadows Homeowners Ass'n v. Mejia*, 249 Ariz. 81, 83, ¶ 6 (App. 2020) (citation omitted).

¶18            Rule 60(b)(3) authorizes relief from a judgment where there was "fraud[,] . . . misrepresentation, or other misconduct of an opposing party[.]" Ariz. R. Civ. P. 60(b)(3). Winston asserts that the superior court erred in denying relief under Rule 60(b)(3) because, she contends, Anderson's motion for summary judgment and subsequent motion to amend contained "material omissions, mischaracterizations, and misrepresentations[.]" According to Winston, Anderson improperly omitted or mischaracterized evidence relevant to his paternity of J.A. Specifically, she alleges, in his motions he "[o]mitted any mention of his 2013 sworn admissions" to paternity, "[p]resented" the DNA test results disproving paternity "without any foundation or authentication," and falsely claimed that he was "surprised" by the DNA test results even though he had previously "expressed doubt" about his paternity of J.A.

¶19            Winston appears to misunderstand the court's rulings granting Anderson's motions. The court did not, as Winston seems to think, make a determination that Anderson was not, in fact, J.A.'s father, nor did the court determine that the paternity judgment should be set aside. Those matters were resolved by stipulation in the family court case. Since the matter of Anderson's purported paternity of J.A. was already resolved in other proceedings, Anderson had no obligation to present admissible

evidence on that issue in these proceedings, and his failure to do so entitles Winston to no relief.

**¶20**      Winston complains that Anderson "masked material facts, undermining the truth-finding process." Because she does not identify any "material facts" that were purportedly "masked," we hold that she has waived this argument by failing to develop it. *See Polanco v. Indus. Comm'n*, 214 Ariz. 489, 491, ¶ 6, n.2 (App. 2007).

**¶21**      Winston next argues that Anderson's failure to present evidence relating to J.A.'s paternity "denied [her] the opportunity to challenge authenticity, cross-examine, or assert defenses like spoliation or collateral estoppel." She asserts, in other words, that the content of Anderson's motions somehow prevented her from responding to them.

**¶22**      This argument makes no sense. Winston has never denied that Anderson timely served copies of his motions on her as required by applicable court rules. Because she received the motions, she could have responded in whatever manner she believed appropriate. The content of Anderson's motions does not excuse, justify, or explain Winston's failure to respond to them.

**¶23**      Rule 60(b)(6) authorizes relief from a judgment for "any other reason justifying relief." Ariz. R. Civ. P. 60(b)(6). Rule 60(b)(6), therefore, is a "catch-all" provision, *see Roll v. Janca*, 22 Ariz. App. 335, 336 (1974), that offers relief only where "extraordinary circumstances" are present, *see Webb v. Erickson*, 134 Ariz. 182, 187 (1982).

**¶24**      Winston argues that Rule 60(b)(6) authorized relief for a number of reasons. First, she asserts, Rule 60(b)(6) applies here because of Anderson's purported "[j]udicial estoppel abuse[.]" For the reasons discussed above, *see supra* ¶¶ 14-15, judicial estoppel does not apply here, and so Winston is entitled to no relief on her claim of "judicial estoppel abuse."

**¶25**      Winston next argues that Rule 60(b)(6) authorized relief here because of Anderson's purported "[m]aterial misrepresentations under Rule 60(b)(3)" and "[e]xtrinsic fraud under Rule 60(b)(3)[.]" But Rule 60(b)(6) applies only when relief is not authorized by any other subsection of Rule 60(b). *Gonzalez*, 243 Ariz. at 535, ¶ 15 (Rule 60(b)(6) is "mutually exclusive" from the other subsections of Rule 60, applying only under "circumstances that do not fit into the other Rule 60 . . . subsections." (citation modified)); *Webb*, 134 Ariz. at 186 (relief under Rule 60(b)(6) cannot be based on a ground for which relief is available under Rule 60(b)(1-5)).

Winston is entitled to no relief, therefore, on her claim for relief under Rule 60(b)(6) on grounds that she admits are cognizable under Rule 60(b)(3).

¶26 Winston asserts, in a cursory manner, that Rule 60(b)(6) authorized relief here because of "[a] breakdown in the adversarial process and erosion of public confidence." Her failure to develop this argument constitutes a waiver. *See Boswell v. Fintelmann*, 242 Ariz. 52, 54, ¶ 7, n.3 (App. 2017). Waiver aside, nothing in the record supports Winston's allegation of "a breakdown in the adversarial process." She could have filed a response to Anderson's motions. For reasons she has never explained, she didn't, and her failure to do so does not reflect a flaw in the adversarial process.

¶27 Finally, Winston complains that Anderson's "evidence" was "unauthenticated." Because she does not identify the specific evidence to which she refers, she has waived this argument. *See* ARCAP 13(a)(7)(A); *Ritchie v. Krasner*, 221 Ariz. 288, 305, ¶ 62 (App. 2009) (claims waived when appellant fails to support argument with citations to the record). Further, to the extent she is referring to the unverified disclosure statement that Anderson submitted in support of his claim for damages, Winston could have challenged the sufficiency of this document to support summary judgment on appeal. *See Wells Fargo Bank, N.A. v. Allen*, 231 Ariz. 209, 214-15, ¶¶ 19-21 (App. 2012) (vacating summary judgment because moving party did not properly authenticate supporting exhibits as required by Rule 56). Because she failed to timely appeal from the judgment, she is not entitled to now rely on Rule 60(b) as an alternative to an appeal. *See Aloia*, 252 Ariz. at 553, ¶ 20 ("Rule 60(b)(6) does not allow the trial court to re-weigh evidence or review legal errors[, n]or does Rule 60(b)(6) provide an alternative to an appeal.").

**CONCLUSION**

¶28 We affirm. We grant Anderson's request for an award of costs on appeal upon compliance with ARCAP 21.

